**UNITED STATES DISTRICT OF COLUMBIA**
**FOR THE DISTRICT OF COLUMBIA**

L&L CONSTRUCTION ASSOCIATES, INC  :
               :
      Plaintiff,    :
               :
v.              :  Civil No. 1:05CV01289
               :  Judge Royce C. Lamberth
SLATTERY SKANSKA, INC.     :
               :
      Defendant.   :

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S**
**RULE 12(B)(6) MOTION TO DISMISS THE COMPLAINT**

  Plaintiff L&L Construction Associates, Inc. ("L&L"), by and through its counsel, hereby files its Opposition to the Motion by Defendant Slattery Skanska, Inc. ("Slattery") to Dismiss the Complaint under Fed.R.Civ.12(b)(6) for failure to state a claim. In support thereof, the following is stated.

**I.**  <u>**Introduction.**</u>

  At issue in this case is whether a private contractor, in order to satisfy the legal mandate of a government contracting authority that the private contractor must include participation by a disadvantaged business enterprise ("DBE") as a subcontractor to be awarded the prime contract, can enter into an agreement with the DBE subcontractor to award that work and then be allowed to repudiate that promise after being awarded the prime contract. Slattery was able to obtain the prime contract ("Prime Contract") from the Washington Metropolitan Area Transit Authority ("WMATA") to construct certain public improvements described as the New York Avenue Station Construction Project (the "New York Avenue Project") by securing a binding agreement from L&L, a DBE subcontractor, to perform all of the underground utilities work needed to complete the New York Avenue Project at a cost of $4.25 million dollars. In effort to avoid a full

and illuminating investigation into the questionable legalities of repudiating its promise to L&L,[1] Slattery has filed a Motion to Dismiss the Complaint based upon the erroneous assertion that in order to state a cause of action for breach of contract a plaintiff must allege in the body of the complaint each "material" term of the contract. As demonstrated below, this argument is at odds with the basic precepts of notice pleading embodied in the Federal Rules of Civil Procedure and is contrary to recent Supreme Court precedent and published decisions in this Circuit. Compounding the error of Slattery's position is its selective and incomplete discussion of only one document bearing on L&L's claim, when the Complaint refers to other documents equally pertinent to the merits of L&L claim.

Each material term of the contract need not be alleged with specificity in the Complaint under Fed.R.Civ.P. 8(a) in order to survive a Rule 12(b)(6) motion to dismiss. The allegation that there is an enforceable agreement contains, by definition, the inferential allegation that at trial evidence will be produced as to mutual assent to the required material terms of the contract and thus, the Complaint places Slattery on adequate notice as to the nature of the claim.

The required material terms of a contract to render the agreement enforceable are questions of fact to be resolved during discovery and at trial, and not in the context of a Rule 12(b)(6) motion. There is no defined minimum mandatory list of material terms in order for a contract to be deemed enforceable. Under the Restatement (Second) of Contracts, §33(2), a contract is enforceable if it provides a sufficient basis for determining whether a breach has occurred and for identifying an appropriate remedy. There was a binding agreement between

---

[1] WMATA required that 25% of the final Prime Contract price be performed by DBE contractors. Once Slattery repudiated its agreement with L&L, it is unknown whether Slattery satisfied this 25% requirement for DBE participation by using other DBE contractors or whether Slattery breached its promise to WMATA to use a sufficient number of DBE contractors. The failure to do so, if known to WMATA, would have been deemed a material breach of the Prime Contract and could have resulted in termination of the Prime Contract and such other remedies that WMATA may have elected to pursue, including but not limited to, declaring Slattery to be ineligible to receive further contracts from WMATA for three years.

L&L and Slattery as to the scope of work and price to be paid. The breach of this agreement by Slattery was total – refusing to allow L&L to perform the work. The remedy for this breach is easily identified and consists of an award of lost profits.

To the extent it becomes necessary to demonstrate mutual assent to other material terms, these other material terms were clearly set forth in the (i) subcontract that Slattery and L&L did in fact execute for a portion of the underground utility work (which subcontract only constituted partial performance of Slattery's obligation to award total underground utility work valued at $4.25 million dollars); (ii) the Request for Proposal issued by WMATA; and (iii) Prime Contract between Slattery and WMATA. The material terms set forth in the Request for Proposal and Prime Contract had to be incorporated into the subcontract between Slattery and L&L, (supplemented as needed by custom and usage and trade practices in the industry).

For these reasons, as elaborated below, Slattery's Motion to Dismiss should be denied.

## II.    In Order to State a Cause of Action for Breach of Contract the Complaint Need Not Allege Each Material Term of the Contract.

Slattery's Motion confuses L&L's evidentiary burden at trial to prove a meeting of the minds as to the material terms of the contract with L&L's far more lenient burden of satisfying the notice pleading requirements of Fed.R.Civ.P. 8. To state a claim for breach of contract, a party must only allege: (i) the existence of an agreement between the plaintiff and defendant; (ii) due performance of the contract by the party alleging the breach; (iii) a breach; and (iv) damages resulting from the breach. See R.H. Damon & Co. v. Softkey Software Prods., Inc., 811 F.Supp. 986, 991 (S.D.N.Y.1993). However, under the relaxed federal pleading requirements, "each element need not be separately pled." Nordic Bank, PLC v. Trend Group, Ltd., 619 F.Supp. 542, 561 (S.D.N.Y.1985). It is enough that the complaint contains "a short and plain statement of the claim" sufficient to put the defendant on notice of the grounds for which plaintiff seeks relief.

Fed.R.Civ.P. 8(a)(2); 2A James W. Moore et al., Moore's Federal Practice  8.13 (2d ed. 1995); Reuben H. Donnelley Corp. v. Mark I Marketing Corp., 893 F.Supp. 285, 290-291 (S.D.N.Y. 1995). In view of the fact that each element of a *prima* facie claim for breach of contract need not be pled in the Complaint in order to satisfy the notice requirements for pleading a cause of action for breach of contract, it makes no sense to conclude that the material terms of one of the elements of a *prima facie* claim for breach of contract (i.e. existence of an agreement) must be plead with specificity.

Any doubt as to the significant distinction between these two stages in the civil proceeding (i.e notice pleading versus the evidentiary burden at trial), and the fact that Slattery may not attempt to impose upon L&L at the pleading stage the burden of identifying every element of a *prima facie* claim for breach of contract was laid to rest by the Supreme Court in Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). In Swierkiewicz, the Supreme Court rejected the respondent's argument that allowing lawsuits based on conclusory allegations of discrimination to go forward will burden the courts and encourage disgruntled employees to bring unsubstantiated suits, ruling as follows:

> Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions. . . . The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim. . . . Whatever the practical merits of this argument, the Federal Rules do not contain a heightened pleading standard for employment discrimination suits. ***A requirement of greater specificity for particular claims is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation***. Furthermore, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test. [Emphasis added.]

534 at 513-515; 122 S.Ct. at 999; <u>Baxter vs. Rose</u>, 305 F.2d 486, 489 (6th Cir. 2002) ("Swierkiewicz may imperil judicially imposed heightened pleading requirements in the normal course of civil litigation.")

Indeed, courts in this District have recognized that the holding in <u>Swierkiewicz</u> means that a "plaintiff need not plead the elements of a prima-facie case in the complaint". <u>U.S. Office Products Co. Securities Litigation</u>, 251 F.Supp.2d 58, 65 (D.D.C. 2003).[2] Even before <u>Swierkiewicz</u>, courts in this District have held that: "A claim will not be dismissed under Rule 12(b)(6) merely because it does not allege with specificity every element of a cause of action, if it contains allegations from which an inference may be drawn that evidence on the essential elements will be produced." <u>Johns vs. Rozet</u>, 141 F.R.D. 211, 219 (D.D.C. 1992). There is no basis to impose a heightened pleading requirement in a breach of contract action by requiring L&L to plead and identify each and every material term of the contract agreed to by L&L and Slattery in order to sufficiently plead a cause of action for breach of contract under Fed.R.Civ. Rule 8(a). <u>See</u> <u>Baxter vs. Rose</u>, 305 F.3d 486, 490 (6th Cir. 2002) ("The rules' intricate system of shifting the burden for explicating complaints to defendants through discovery and responsive pleadings led the [Supreme] Court to conclude that courts may not establish heightened pleading standards through the judicial interpretation of the Federal Rules of Civil Procedure, but only through their amendment.")

---

[2] One issue not addressed in Slattery's Motion is which jurisdiction's law should govern this dispute. L&L is a District of Columbia corporation with its principal place of business located in Maryland, whereas Slattery is a New York corporation with its principal place of business in New York. The contract was to be performed in the District of Columbia but it is not clear at this time in which jurisdiction the contract was formed. For example, the subcontract that was executed between Slattery and L&L as alleged in ¶12 of the Complaint, states that the interpretation of the subcontract and any breach thereof, shall be governed by the laws of the State of New York. In any event, none of the cases cited by Slattery hold that all of the material terms of the contract must be alleged in order to survive a Rule 12(b)(6) motion. Even the opinion in <u>Zarco Licensing, Inc. vs. Cinmar</u>, 779 F.Supp. 276 (S.D.N.Y 1991) refers only to "the terms of the contract" and does not state that all of the "material" terms of the contract which render the contract enforceable must be alleged. Even if <u>Zarco</u> was interpreted in that fashion such a holding would be contrary to Supreme Court precedent, the published decisions in this Circuit, and Fed.R.Civ.P 8(a).

It would be an incongruent result to hold that a plaintiff must plead each and every material element of a contract in order to survive a Rule 12(b)(6) motion to dismiss, when the U.S. Supreme Court has held that a plaintiff need not even plead the elements of a *prima facie* claim in order to survive a Rule 12(b)(6) motion to dismiss. As explained by the Supreme Court, Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. A requirement of greater specificity for a breach of contract claim is a result that must be obtained by the process of amending the Federal Rules, and not by judicial interpretation. The evidentiary issue of whether there was a meeting of the minds as to the essential material terms of the agreement is a matter to be explored in discovery and to be resolved either by way of summary judgment or at trial. See Swierkiewicz v. Sorema, N.A., 534 U.S. 506, 512, 122 S.Ct. 992, 998, 152 L.Ed.2d 1 (2002) ("This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims.")

At this juncture in the proceeding all that is required is that the Complaint "contains allegations from which an inference may be drawn that evidence on the essential elements will be produced." See Johns v. Rozet, 141 F.R.D. 211, 219 (D.D.C. 1992); Accord M.K. vs. Tenet, 99 F.Supp.2d 12 (D.D.C. 2000) ("In order to state a claim, and thereby survive a Rule 12(b) motion to dismiss, a complaint must contain either direct or ***inferential allegations*** sufficient to state all elements of a cause of action." [emphasis added]); Performance Contracting, Inc. vs. Seaboard Surety Company, 163 F.3d 366 (6th Cir. 1998) ("A direct complaint must contain either direct or inferential allegations with respect to all material elements necessary to sustain a recovery under some viable legal theory."). Without question the Complaint alleges the existence of an agreement between L&L and Slattery which agreement the Complaint alleges is

enforceable. Implicit in the allegation that there was agreement between L&L and Slattery -- and that the agreement is enforceable -- is the "inferential allegation" that sufficient material terms were agreed to by L&L and Slattery so as to render the agreement enforceable by the Court. As pointed out by Slattery, unless there is a meeting of the minds as to the required material terms of a contract the contract is not enforceable. Therefore, the basic allegation that there is an enforceable agreement contains -- by definition -- the underlying inferential allegation that there was an agreement as to the required material terms so as to render the contract enforceable and that evidence on those material terms will be produced at trial. Otherwise, there would be no basis to allege the existence of an enforceable agreement. This is all that the notice pleading rules require at this juncture.

III.    **The Issue of What Are the "Material" Terms of the Contract May Not Be Resolved in the Context of a Rule 12(b)(6) Motion.**

There is practical necessity underlying the notice pleading rule as articulated by the U.S. Supreme Court to the instant dispute and the corollary proposition that each and every material term of the contract need not be plead with specificity to satisfy Fed.R.Civ.P. 8. There undoubtedly will be a dispute as to what are the specific material terms of the contract at issue in this case for which there had to be a meeting of the minds in order to create an enforceable contract. As held by the D.C. Court of Appeals, "what the parties deem to be the material elements of their agreement – either set forth in or absent from those documents – is largely a question of fact." Georgetown Entertainment Corporation vs. D.C., 496 A.2d 587, 590 (D.C. 1985). What is clear from the case law is that every contract is different, and the benchmark for determining the minimum list of material terms agreed to, which result in a contract being deemed enforceable, will vary from contract to contract and case to case. To require a plaintiff to articulate each of those material terms in a notice pleading would transform the pleading

requirement into the final battleground for adjudicating the ultimate legal issue in the case, i.e., what are the required material terms for this particular contract and whether there was a meeting of the minds as to each material term? Fed.R.Civ.P. 8 does not require that this ultimate issue of fact be decided at this point in the proceeding. Indeed, it is impossible to make an informed judgment on that central issue without the benefit of discovery and a full understanding of all the facts and circumstances bearing on the particular transaction at issue in this case. Clearly, the notice pleading stage is not the point when this examination and adjudication is supposed to take place.

**IV.    There Is No Defined Minimum Mandatory List of Material Terms for a Contract.**

Slattery tells the Court that the basic problem with L&L's Complaint is the failure to allege – "as required by law" -- an agreement as to "[1] scope of work; [2] general terms and conditions of contract; [3] schedule of payments; and [4] contract duration", citing page 1238 of the decision in Jack Baker Inc. vs. Office Space Development Corporation, 664 A.2d 1236 (D.C. 1995). See Motion at p. 3. However, the pivotal assertion by Slattery that the law requires mutual assent by L&L and Slattery as to each of these four specified "material terms", based upon the referenced citation in Jack Baker, is simply wrong. A review of page 1238 of the Jack Baker decision reveals that nowhere on that page – or anywhere else in the opinion – does the D.C. Court of Appeals pronounce a rule of law which states that in order to be enforceable, each and every contract (regardless of the facts and circumstances of the transaction) must have assent as to these four "material terms" identified by Slattery.

Slattery's erroneous assertion that there must have been mutual assent as to the "general terms and conditions of contract" illustrates the depth of Slattery's confusion on this area of the law regarding contract formation and enforceability. There is no binding precedent in the District

of Columbia (or published decision in other jurisdictions that L&L's counsel can locate) which holds that there that must be assent as to the "general terms and conditions of the contract" before an agreement will be enforceable. Later on in its Motion, Slattery adds to this list of alleged required material terms by stating that there must be an agreement as to "limits on liability, indemnification, bonding requirements . . . and the like". <u>See</u> Motion at. 4. The very fact that Slattery proffers different lists of different material terms at different times in its Motion and uses the ill-defined phrase "and the like", illustrates the point that there is no all encompassing minimum mandatory list of material terms applicable to each and every contract. The answer to that question will depend upon the facts and circumstances of each contract and underlying transaction. The fact that Slattery can not even be consistent its Motion as to the alleged list of the minimum mandatory material terms is not surprising since the law does not presume to establish such a minimum mandatory list of material terms for every contract.

Moreover, Slattery's insistence on establishing a minimum mandatory list of material terms ignores the cautionary statements by the D.C Court of Appeals that: "The requirement of definiteness cannot be pushed to extreme limits. All agreements have some degree of indefiniteness and some degree of uncertainty. All the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy." <u>Rosenthal vs. National Produce Company, Inc.</u>, 573 A.2d 365, 369 (D.C. 1990). Further, "[p]arties may make an enforceable contract binding them to prepare and execute a subsequent documentary agreement." <u>D.C. Area Community Council vs. Jackson</u>, 385 A.2d 185, 187 (D.C. 1978); <u>Accord Jack Baker Inc. vs. Office Space Development Corporation</u>, 664 A.2d 1236 (D.C. 1995) ("Even if the parties intend to subsequently enter into a written contract, as was indisputably the case here, it does not necessarily follow that they have not made any contract until the writing is

completed and signed. The parties may be bound by their oral agreement if it meets the dual requirements of intent and completeness."); <u>T.C. V'Soske, S.T. vs. E.T. Barwick</u>, 404 F.2d 495 (2nd Cir. 1968) ("But it is also plain that all the terms contemplated by the agreement need not be fixed with complete and perfect certainty for a contract to have legal efficacy. . . . Such negotiations on new provisions do not defeat the original agreement of the parties."); <u>Biothermal Process Corp. vs. Cohu</u>, 119 N.Y.S.2d 158, 164 (1953) ("The agreement to agree doctrine is that there must be agreement upon all the essential terms of a contract – not that there must be agreement upon all things which have a logical or business relation to that contract.").

In reviewing the various opinions from the D.C. Court of Appeals (which are generally consistent with opinions from other jurisdictions) it is evident that there is no established minimum mandatory list of material terms for each and every contract that must be agreed to before any contract will be deemed enforceable. For example, in <u>Rosenthal vs. National Produce Company, Inc.</u>, 573 A.2d 365 (D.C. 1990), the Court stated as follows: "A contract must be sufficiently definite as to its material terms (which include, e.g., subject matter, price, payment terms, quantity, quality, and duration) that the promises and performance to be rendered by each party are reasonably certain." <u>Id</u>. at 369. However, the term "e.g." means "for example", and by listing these items the D.C. Court of Appeals was not pronouncing a rule of law as to the mandatory minimum list of material terms in order for any contract to be enforceable in the District of Columbia. Other courts have set forth a slightly different litany of required material terms in discussing the issue of enforceability. <u>See</u> <u>U.S. Office Products Co. Securities Litigation</u>, 251 F.Supp.2d 58, 71 (D.D.C. 2003) ("Material terms include price, payment terms, duration, and the identity of the parties involved.") The list of material terms in <u>Rosenthal</u> is different from the list identified in <u>U.S. Office Products</u>, and both lists are different from the list

cited by Slattery in reliance upon the decision in <u>Jack Baker</u>. This variance in the lists of material

terms from case to case demonstrates clearly the point that the required list of essential material

terms will differ from contract to contract, transaction to transaction, and case to case. As held by

the D.C. Court of Appeals, what the parties deem to be the material terms of their contract is a

question of fact. <u>See</u> <u>Georgetown Entertainment Corporation vs. D.C.</u>, <u>supra</u>. Needless to say,

questions of fact are not resolved in the context of a Rule 12(b)(6) motion.

**V.      The Restatement (Second) of Contracts, §33(2), Provides the Test for Determining
        Whether There Was An Agreement As To A Sufficient Number of Material Terms
        To Render a Contract Enforceable.**

        Although it is a question of fact in each case as to what are the material terms for an

enforceable contract, the test for determining whether there has been a meeting of the minds as to

a sufficient number of material terms "is met when the contract provides a sufficient basis for

determining whether a breach has occurred and for identifying an appropriate remedy."

<u>Rosenthal vs. National Produce Company, Inc.</u>, 573 A.2d 365, 369 (D.C. 1990) <u>citing</u>

Restatement (Second) of Contracts §33 (1981). The D.C. Court of Appeals has subsequently

cited with approval the test for enforceability embodied in §33 of the Restatement (Second) of

Contracts. <u>See</u> <u>Obelisk Corp. v. Riggs Nat. Bank of Washington, D.C.</u>  668 A.2d 847, 855 (D.C.

1995) ("Restatement (Second) of Contracts § 33(2) (1979) (the terms of a contract are reasonably

certain if they provide a basis for determining the existence of a breach and for giving an

appropriate remedy)"). Even the U.S. Supreme Court has cited this test with approval. <u>See</u> <u>Texas</u>

<u>v. New Mexico</u>  482 U.S. 124, 129, 107 S.Ct. 2279, 2284 (1987) ("A court should provide a

remedy if the parties intended to make a contract and the contract's terms provide a sufficiently

certain basis for determining both that a breach has in fact occurred and the nature of the remedy

called for. Restatement (Second) of Contracts § 33(2), and Comment b (1981).")  Judge Harris,

in <u>Basch v. George Washington University,</u>  370 A.2d 1364 (D.C. 1977), discussed the

significance of the Restatement (Second) of Contracts, §32, for purposes of determining whether

a contract is enforceable, as follows:

> I note that the Restatement (Second) of Contracts §§32-33 (Tent. Draft No. 1,
> 1964) and §§2-204(3) and 2-305 through 309 of the Uniform Commercial
> Code, D.C.Code 1973, §§28:2-204(3), 2-305-309, are much less demanding
> about certainty and set forth methods for resolving vagueness problems. Our
> decision today does not commit us to a standard of certainty so restrictive that
> it might frustrate reasonable expectations in another case. The authorities
> whom I cite do give guidance on clarifying uncertainty. Moreover, this
> jurisdiction long ago imposed upon contracting parties who have left terms
> open for subsequent decision a good faith duty to reach agreement. <u>Morris v.
> Ballard</u>, 56 App.D.C. 383, 16 F.2d 175 (1926). <u>Cf</u>. <u>City Stores Co. v.
> Ammerman</u>, 266 F.Supp. 766, 772-76 (D.D.C.1967), aff'd, 129 U.S.App.D.C.
> 325, 394 F.2d 950 (1968). <u>See</u> <u>generally</u> Knapp, Enforcing the Contract to
> Bargain, 44 N.Y.U.L.Rev. 673 (1969).

<u>Id</u>. at 1369. In short, there is no mandatory minimum list of material terms defining the

benchmark for enforceability other than the fact that every contract must have a lawful subject

matter, legal consideration, mutuality of assent and mutuality of obligation. <u>See</u> <u>Virtual Defense</u>

<u>and Development International, Inc. vs. Republic of Moldova</u>, 133 F.Supp. 2d 9 (D.D.C. 2001)

("A contract has certain essential elements, to wit, competent parties, lawful subject matter, legal

consideration, mutuality of assent and mutuality of obligation."). Beyond those basic

requirements to form a binding contract, the test of whether there was sufficient agreement as to

material terms is met when the contract provides a basis for determining whether a breach has

occurred and for identifying an appropriate remedy. Every contract can have a multitude of

material terms. There need not be an agreement as to each and every possible material term

which have a logical or business relation to the contract in order for the contract to be

enforceable. What matters for enforceability is whether there was an agreement as to a sufficient

number of material terms so that the Court can determine whether there was a breach and if so, what is the remedy for that breach.

For example, in <u>Arok Construction Company vs. Indian Construction Services</u>, 174 Ariz. 291, 848 P.2d 870 (1993), the general contractor ICS had promised the subcontractor AROK that if the general contractor ICS was awarded the prime contract that ICS would enter into a subcontract with AROK. The trial court had entered summary judgment in favor of ICS ruling there was not a meeting of the minds as to the required material terms. The Arizonian Appellate Court reversed, and in doing so cited the test from the Restatement (Second) of Contracts, §33(2), (adopted by the D.C. Court of Appeals in <u>Rosenthal vs. National Produce Company, Inc.</u>, <u>supra</u>.), that: "Any requirement of reasonable certainty is satisfied if the agreement that was made simply provides a basis for determining the existence of a breach and for giving an appropriate remedy." 174 Ariz. 295, 848 P.2d 874; <u>citing</u> Restatement (Second) of Contracts §33(2). In rejecting any notion that the test of enforceability is based upon satisfying a list of material terms, the Arizonian Appellate Court explained that the test contained in the Restatement,

> [R]eflects a clear and overwhelming trend in the law. The old "formalist" view limited the agreement to written terms and emphasized rules of contract, such as the requirement that the agreement include all material terms. This has long since give way to the "realist" approach, exemplified by the Uniform Commercial Code and the Second Restatement of Contracts. The latter emphasizes standards rather than rules, and assigns to courts the task of upholding the agreements parties intended to make.

<u>Id</u>. The Court went on to hold that:

> The standard for contract enforceability is not whether the agreement included a resolution of every matter and anticipated every contingency. The terms of a contract are reasonably certain if they provide a basis for determining the existence of a breach and for giving an appropriate remedy. *Restatement (Second) Contracts* §33(2) (1981). If a court can determine the existence of a breach by ICS and fashion an appropriate remedy for AROK, then the terms of

their agreement are reasonably certain and enforceable. Thus, "gaps" or omitted terms, or vague and indefinite terms, are not invariably fatal to the rights of the parties to obtain enforcement of their bargain.

174 Ariz. 297, 848 P.2d 876. As in the instant case, in <u>Arok</u> there had been an agreement as to the scope of work and the agreed upon price for the work, which the Court held was sufficient for purposes of stating a cause of action for breach of contract, holding as follows:

> The terms of this contract are sufficiently certain for two independent reasons. First, ICS breached the contract at a point when the only terms necessary to determine the existence of the breach (scope of work) and for giving an appropriate remedy (agreed-upon price) were present. Second, there was evidence of a course of dealing involving a standard form contract which could be used to supply any missing terms.[3] Because the breach by ICS was a total breach of contract – ICS refused to allow AROK to perform the work – the absence of contract terms such as bonding is not fatal to AROK's claim. . . . If ICS made a binding promise to pay AROK for this work, there is sufficient basis for deciding whether a breach occurred without "gap-filling" by a court. . . . The agreed price, together with other evidence such as the cost to AROK of performing the work, will enable the court to give an appropriate remedy.

<u>Id</u>. In the instant case, the Complaint clearly alleges that there was an agreement as to the "scope of work" (i.e. underground utilities work) and an "agreed upon price" (i.e. $4.25 million dollars). The breach by Slattery was total – refusing to allow L&L to perform the work. The remedy for this breach is straightforward, the lost profits on a $4.25 million dollar contract. Under the Restatement (Second) of Contracts, §33(2), the Complaint identifies the required material terms on which there was mutual assent so as to render the agreement enforceable.

---

[3] As discussed in Section VI, *infra*. pp. 17 to 20, as alleged in ¶12 of the Complaint, Slattery and L&L executed a subcontract for a portion of the underground utility work (which subcontract only constituted partial performance of Slattery's obligation to award total underground utility work valued at $4.25 million dollars). Thus, this subcontract, along with the Request for Proposal issued by WMATA and the Prime Contract between Slattery and WMATA, set forth the agreement between L&L and Slattery as to other material terms of their subcontract. Similar to the facts in <u>Arok</u>, the subcontract that was to be executed between L&L and Slattery were to contain many standardized terms and conditions and these other material terms were already defined and agreed upon by reference to the subcontract that was executed, the Request for Proposal, and Prime Contract. As such, the course of dealing and custom and usage in the industry also provides a reliable method of defining, to the extent needed, the agreed upon terms and conditions between L&L and Slattery.

**VI.     Slattery's Motion Incorrectly Assumes That The October 3, 2001 Agreement Consists Only of the Document Attached to Slattery's Bid to WMATA.**

   *1.     Introduction.*

Slattery's Motion states that Slattery "assumes *arguendo* that Plaintiff's reference to an October 3, 2001 document in the Complaint at ¶8 is a reference to a document attached to Slattery's bid to WMATA as part of its bid proposal." (<u>See</u> Motion at p. 4.) Slattery, however, has incorrectly read ¶8 of the Complaint, which paragraph refers to "an ***agreement*** dated October 3, 2001" – and does not specifically refer to the ***"document"*** dated October 3, 2001 which Slattery attached to its bid to WMATA as part of its bid proposal. The October 3, 2001 document is but one of many, many documents which collectively can form the basis for the October 3, 2001 Agreement between Slattery and L&L.[4] The Complaint also refers to the subcontract Slattery and L&L executed for a portion of the underground utility work (which subcontract only constituted partial performance of Slattery's obligation to award total underground utility work valued at $4.25 million dollars) <u>see</u> ¶12 of the Complaint; the Request for Proposal ("RFP") issued by WMATA, <u>see</u> ¶6 of the Complaint; and the Prime Contract between Slattery and WMATA, <u>See</u> ¶10 of the Complaint. These documents collectively, in conjunction with the October 3, 2001 document that Slattery submitted as part of its bid to WMATA, form the basis of the October 3, 2001 Agreement between Slattery and WMATA.

---

[4] As previously discussed in Section V, under the Restatement (Second) of Contracts, §33(2), the October 3, 2001 document, signed by both Slattery and L&L which sets forth their agreement as to the agreed upon scope of work and price to be paid, created an enforceable contract. As in <u>Arok</u>, the breach by Slattery was total and therefore the material terms set forth in the October 3, 2001 document are indeed sufficient for purposes of creating an enforceable contract for which the Court can provide the appropriate remedy. However, in the event it becomes necessary to expand upon the scope of the material terms agreed to between Slattery and L&L, the October 3, 2001 Agreement embodied not only the October 3, 2001 document but other documents setting forth other material terms agreed to between L&L and Slattery as discussed further in this Section VI.

2.      *The October 3, 2001 Document.*

As alluded to in Slattery's discussion of the October 3, 2001 document, the October 3, 2001 document signed by both Slattery and L&L states unambiguously that L&L "will enter into a formal agreement with [Slattery] for the [underground utility] work upon [Slattery's] execution of a contract with [WMATA]." Slattery's signature to the October 3, 2001 document is expressly identified as an "acceptance" of this offer and promise by L&L to enter into a formal agreement. Moreover, in the "Schedule of DBE Participation" submitted by Slattery to WMATA, Slattery represented that it "agrees to enter into a formal agreement with [L&L] for the work and at, or greater than, the prices listed in this Schedule subject to award of a Contract with [WMATA]." It is settled that "[p]arties may make an enforceable contract binding them to prepare and execute a subsequent documentary agreement." D.C. Area Community Council vs. Jackson, 385 A.2d 185, 187 (D.C. 1978).[5] It is significant to note that the quoted statement in the October 3, 2001 document does not say that the agreement is subject to, conditioned upon, or in any way dependent upon the execution of another written agreement. Rather, the sentence simply states that L&L and Slattery will enter into a "formal agreement", which clearly indicates that the subsequent written agreement was intended and agreed to simply memorialize the agreement that had been entered into as of October 3, 2001 and was to be binding once Slattery was awarded the Prime Contract from WMATA. Accord Park Inn Hotel, Inc vs. Messing, 31 Misc.2d 961, 224 N.Y.S.2d 179, 184 (1962) ("A statement that the parties contemplate the signing of a formal contract does not render a writing unenforceable."); Four Seasons Hotels Limited vs. Vinnik, 127

---

[5] See Also Jack Baker Inc. vs. Office Space Development Corporation, 664 A.2d 1236 (D.C. 1995) ("Even if the parties intend to subsequently enter into a written contract, as was indisputably the case here, it does not necessarily follow that they have not made any contract until the writing is completed and signed. The parties may be bound by their oral agreement if it meets the dual requirements of intent and completeness.") Unlike the facts in Jack Baker which involved an oral agreement to enter into a future agreement subject to approval by a third party (i.e., the owner), the instant case involves a written agreement signed by both parties which on its face was enforceable and conditioned only upon Slattery being awarded the Prime Contract.

A.D.2d 310, 318, 515 N.Y.S.2d 1 (1987) ("A contract does not necessarily lack all effect merely because it expresses the idea that something is left to future agreement.)[6] Although the October 3, 2001 document is sufficient by itself to create an enforceable agreement, there are other document referred to in the Complaint that can, if need be, provide other material terms agreed to by Slattery and L&L.

**3.    *The Subcontract.***

As alleged in paragraph 12 of the Complaint, Slattery and L&L did in fact subsequently execute a subcontract for a portion of the underground utility work. Significantly, Slattery concedes in its Motion "that the parties eventually assented to terms and conditions for a binding contract." See Motion at pg. 6, n. 1. In light of this concession it is puzzling that Slattery contends that the Complaint fails to allege the requisite agreement as to the required material terms. In any event, this executed subcontract only constituted partial performance of Slattery's obligation to award all of the underground utility work required by the Prime Contract as part of the New York Avenue Station Project with a total value of $4.25 million dollars. At the time the subcontract was executed, it was represented by Slattery to L&L, and understood and agreed between L&L and Slattery, that the remaining work for all of the underground utility work needed for the New York Avenue Station Project would be awarded to L&L once Slattery was ready to proceed with that portion of the job. This promise and agreement was subsequently restated and reaffirmed by Slattery and L&L subsequent to the execution of the subcontract.

---

[6] Obviously, the agreement by L&L and Slattery that L&L would be allowed to do the underground utility work was conditioned upon Slattery entering into the Prime Contract with WMATA. As alleged in the Complaint, Slattery did in fact enter into the Prime Contract with WMATA. As discussed in Section V, the conditional agreement reached on October 3, 2001 was enforceable in that the price and the scope of work had been agreed upon and therefore, at that point there was a lawful subject matter, legal consideration, mutuality of assent and mutuality of obligation which would become binding at such time that Slattery executed the Prime Contract with WMATA. There was an agreement as the minimum amount of material terms necessary for the Court to determine that there has been a breach (i.e. failure to award the subcontract work to L&L) and fashion an appropriate remedy for the breach (i.e. award of lost profits.).

Thus, the form of the subcontract with all of the standardized terms and conditions for the construction of the underground utility work was agreed to by L&L and Slattery in writing. All that remained was for Slattery to honor its promise by expanding the subcontract to include *all of the underground utility work* for the New York Avenue Station Project – and not just the small portion set forth in the executed subcontract.

### 4.    The Request for Proposal Issued by WMATA.

The Complaint also refers to the RFP that was issued by WMATA for the New York Avenue Station Project. See ¶6 of the Complaint. The RFP contained specific requirements as to the material terms and conditions of any Prime Contract and in turn specified the material terms and conditions that had to be contained in any subcontract entered into between Slattery and its subcontractors. Therefore, at the time the October 3, 2001 document was executed it was understood and agreed by the prime contractor, Slattery, and the subcontractor, L&L, that if Slattery was awarded the Prime Contract the subcontract between Slattery and L&L would contain the same material terms specified in and required by the RFP.

### 5.    The Prime Contract Between Slattery and L&L.

The Complaint also refers to the Prime Contract executed between Slattery and WMATA. See ¶10 of the Complaint. As is standard in the construction industry, and specified in the RFP and Prime Contract, and stipulated in the subcontract that was executed by L&L and Slattery, any subcontract awarded by Slattery as part of the New York Avenue Station Project would have to incorporate and adopt by reference the Prime Contract between Slattery and WMATA, along with the plans, specifications, drawings, and schedule of work. The RFP dictated that Slattery "shall incorporate the obligations" of the Prime Contract into its subcontract with L&L. It was agreed and understood as of October 3, 2001 that in the

subcontract L&L would assume towards Slattery all of the obligations and responsibilities applicable to the underground utility work which Slattery assumed towards WMATA under the Prime Contract. Similarly, it was agreed that Slattery would have the same rights and remedies against L&L with respect to the underground utility work as WMATA had against Slattery under the Prime Contract. Thus, the Prime Contract set forth in detail the material terms and conditions of any subcontract between L&L and Slattery.

> **6.      The October 3, 2001 Agreement Between L&L and Slattery.**

In sum, the October 3, 2001 document, the subcontract executed by Slattery and L&L, the Prime Contract between WMATA and Slattery, and the RFP issued by WMATA defined the respective duties and obligations of L&L and Slattery in their subcontract for L&L to perform the underground utilities work. It is of course well settled that: "When a written agreement incorporates a second writing, the two documents must be read together as constituting the contract between the parties." Vicki Bagley Realty, Inc. v. Laufer 482 A.2d 359, 366 (D.C., 1984). Moreover, the rule applies even if the other document is not signed by the contacting parties. See Trans-Bay Engineers & Builders, Inc. v. Hills 551 F.2d 370, 379, 179 U.S.App.D.C. 184 (1976) ("Where two or more written agreements are contemporaneously executed as part of one complete package, they should be construed together and should be construed as consistent with each other, even if not all the agreements are signed by the same parties.")

The significance of this rule of contract interpretation for construction contracts was demonstrated in Ray v. William G. Eurice & Bros. 201 Md. 115, 128, 93 A.2d 272, 279 (1952), where plaintiff had contracted with defendant to build a home. There arose a subsequent disagreement as to the exact plans and specifications from which the home was to be built, which plans and specifications were referenced in the contract as being attached, but in fact were not

attached at the time the contract was signed. The trial court ruled that there had been a failure of a meeting of the minds as to the exact plans and specifications, and the Maryland Court of Appeals reversed ruling as follows:

> The lower court seemingly attached significance to the fact that the plans and specifications were not physically fastened to the contract document which was executed, although it specifically and explicitly referred to both. In this situation physical attachment has not the significance so attributed to it. It is settled that where writing refers to another document that other document, or so much of it as is referred to, is to be interpreted as part of the writing.

L&L and Slattery agreed that the material terms and conditions of their subcontract for the underground utility work would (i) contain the material terms and conditions specified in and mandated by the RFP; and (ii) would mirror, incorporate and reflect the same material terms and conditions contained in the Prime Contract between Slattery and WMATA pertaining to the underground utility work. See Castelli vs. Tolibia, 83 N.Y.S.2d 554, 564 (1948) ("Nor can a contract be rejected as uncertain, if it can be rendered certain by reference to something certain.") Indeed, Slattery and L&L had no choice but to agree to those material terms and conditions since it was a condition of WMATA awarding the Prime Contract to Slattery and it was required that any subcontract to be awarded by Slattery to L&L would contain these same material terms and conditions. Indeed, the subsequent subcontract executed by L&L and Slattery reflected and adhered to this requirement by including the material terms of the RFP and incorporating the material terms of the Prime Contract. Therefore, any material term which Slattery wishes to advance as a condition for its agreement with L&L were set forth, defined and agreed upon between Slattery and L&L with the requisite specificity in the October 3, 2001 Agreement.[7]

---

[7] Slattery criticizes L&L for not attaching the October 3, 2001 document to the Complaint. There is of course no requirement to attach any document to the complaint and no authority or rule which supports the unsubstantiated assertion by Slattery that "an alleged written contract which is so central to Plaintiff's claim is normally attached to

7. **Conclusion.**

In sum, no matter what list of material terms Slattery wishes to advance as the mandatory minimum list of material terms for an enforceable contract, the October 3, 2001 document, the subcontract executed by L&L and Slattery, the RFP issued by WMATA, and the Prime Contract between Slattery and L&L (supplemented as needed by custom and usage and trade practices in the industry), will provide the answer and define the terms with the requisite specificity so as to render the contract between L&L and Slattery enforceable. There are many published decisions which have ruled that a subcontractor has a viable claim against a general contractor for refusing to award the subcontract to the subcontractor that had been promised as part of the bidding promise.

The holding in Bridgeport Restoration Co., Inc. v. A. Petrucci Const. Co. 211 Conn. 230, 230-231, 557 A.2d 1263, 1264 (1989) was based upon facts virtually identical to the instant case as pled in the Complaint and involved the subsequent refusal by the general contractor to award the promised subcontract to a DBE subcontractor. Indeed, the facts are so similar that it is worthwhile to quote at length the following passage from the published decision:

> The trial court found as follows: the plaintiff was a roofing and siding contractor and was qualified as a disadvantaged business enterprise (DBE), also known as a minority business enterprise. The defendant was a contractor engaged in constructing commercial and industrial buildings. The Greater Bridgeport Transit District (transit district) put out to bid a contract to build a garage to be funded in part by the federal and state governments. In accordance with the requirements for government funding for the garage, the bid notice required at least 10 percent DBE participation, for which the plaintiff was qualified. The defendant was awarded the contract by the transit district,

the Complaint". (See Motion at p. 2). The objective of notice pleading and the encouragement of brevity that it promotes would counsel not attaching documents to the complaint. Moreover, the October 3, 2001 document is only the tip of the iceberg and according to Slattery's theory of pleading the subcontract executed by L&L and Slattery, the RFP issued by WMATA, and the Prime Contract between Slattery and WMATA, along with the plans and specifications, would had to have been attached to the Complaint. These documents are hundreds of pages in length, and to attach them to the Complaint would have unnecessarily burdened the Court at this time with a huge stack of paper.

having attached to the contract as well as to the bid a "Schedule of DBE and WBE [women's business enterprise] Participation" that listed the plaintiff as a DBE company that would perform the roofing work, sheet metal work and miscellaneous other work for $400,000, which was 4.9 percent of the total contract.

The court specifically found that the plaintiff's president and an authorized agent of the defendant agreed on a bid price of $400,000 in telephone negotiations before the defendant submitted its bid on the contract to the transit district. The court also found that at that point the defendant's project manager told the president of the plaintiff company that if the defendant were awarded the contract the plaintiff would get the subcontract. After the defendant was awarded the contract it sought further adjustments in the subcontract that were refused by the plaintiff. Thereafter, the defendant awarded the subcontract to a different qualified bidder.

Based upon these facts, the trial court found in favor of the subcontractor on its breach of contract claim. The Supreme Court for Connecticut affirmed this decision.

In Electrical Construction & Maintenance Company, Inc. vs. Maeda Pacific Corporation, 764 F.2d 619 (9th Cir. 1985), the plaintiff ECM, a subcontractor, had submitted a bid to the defendant Maeda, a prime contractor, which bid the prime contractor had used to secure the Prime Contract from a government authority. The Prime Contractor then refused to use the subcontractor. ECM sued Maeda for breach of contract and based upon promissory estoppel, alleging that Maeda had promised to use ECM as the subcontractor if EDM would submit a bid. The trial court dismissed the complaint for failure to state a claim and the Court of Appeals for the Ninth Circuit reversed and reinstated the complaint holding that: "[W]here a subcontractor allegedly agreed to bid only after receiving the general contractor's promise to accept the bid if it were the low bid and if the general contractor were awarded the prime contract, there is consideration for the general contractor's promise", and therefore the subcontractor stated a cause of action. Id at 621.

Finally, in W.R. Townsend Construction, Inc. vs. Jensen Civil Construction, Inc., 728 So. 2d 297 (Dist. App. Fla. 1999), the plaintiff, a subcontractor, alleged that the defendant, a prime contractor had promised to award the subcontract to plaintiff if the defendant was successful in securing the prime contract from Florida Department of Transportation. The defendant was awarded the prime contract but failed to use the plaintiff as a subcontractor. Plaintiff sued, alleging the existence of an oral agreement between plaintiff and defendant, which oral agreement specifically contemplated the parties entering into a written contract if the defendant was awarded the Prime Contract. The trial court dismissed the complaint for failure to state a cause of action. The Florida appellate court reversed, holding as follows: "We conclude that the allegations contained in Count I satisfy the threshold requirements . . .  that the courts will recognize a contract so long as no essential terms remain open for consideration and negotiation. . . . The fact that other, non-essential terms remained open is not fatal to appellant's claim." Id at. 301-302.[8]

A review of these opinions demonstrates that each case is unique and its resolution depends upon the facts and circumstances of each transaction. Suffice it to say that until the matter is fully explored in discovery and all the evidence presented to the trier of fact it is premature to form any opinion much less reach a final adjudication on this issue. All that matters at this time is that the Complaint clearly states a cause of action placing Slattery on notice as to the nature of the claim.

---

[8] See Also Arok Construction Company vs. Indian Construction Services, 174 Ariz. 291, 848 P.2d 870 (1993) (Court reversed summary judgment, holding that subcontract stated a claim for trial when the general contractor had told the subcontractor that `If we get the job, you get the job'".); Havens Steel Co. v. Randolph Engineering Co. 613 F.Supp. 514 (D.C.Mo.1985) (A proposed contract, as modified by the terms of subcontractor's letter, became a complete, substituted contract with reference to duct work project, defining extent of parties' right and duties in connection with that project, even though agreement had only been reached upon details, price and schedule of work itself and other respects of relationship were left to future negotiation.)

**WHEREFORE**, Plaintiff L&L Construction Associates, Inc. respectfully request that the

Motion to Dismiss filed by Defendant Slattery Skanska, Inc. be denied.

August 2, 2005                                    **RESPECTFULLY SUBMITTED**


_____/s/_____
Bradshaw Rost, Esq. (D.C. Bar #376064)
***Tenenbaum & Saas, P.C.***
4330 East-West Hwy., Ste. 1150
Bethesda, Maryland 20814
(301) 961-5300
(Fax) 961-5305
Counsel for Plaintiff L&L Construction
Associates, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 2, 2005, I electronically filed the foregoing Opposition to Motion to Dismiss with the Clerk of the District Court using its CM/ECF System. Service of these papers was perfected electronically, as provided for under Local Civil Rule 5.4(d), on the following:

Val S. McWhorter
Edmund M. Amorosi
W. Stephen Dale
SMITH, PACHTER, MCWHORTER & ALLEN, PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182


_____
Bradshaw Rost

## UNITED STATES DISTRICT OF COLUMBIA
## FOR THE DISTRICT OF COLUMBIA

L&L CONSTRUCTION ASSOCIATES, INC   :
                 :
        Plaintiff,    :
                 :
v.                 :  Civil No. 1:05CV01289
                 :  Judge Royce C. Lamberth
SLATTERY SKANSKA, INC.     :
                 :
        Defendant.   :

### ORDER

  **UPON CONSIDERATION** of the Motion to Dismiss the Complaint filed by Defendant

Slattery Skanska, Inc. under Fed.R.Civ.P. 12(b)(6) for Failure to State a Claim, and the

Opposition thereto filed by Plaintiff L&L Construction Associates, Inc., it is this ___ day of

_____, 2005

   **ORDERED, ADJUDGED AND DECREED**

  1.  The Motion to Dismiss be, and hereby is, **DENIED.**

          _____
          Judge Royce C. Lamberth
          U.S. District Court Judge for the
          District of Columbia

cc:

Bradshaw Rost, Esq.
***Tenenbaum & Saas, P.C.***
4330 East-West Hwy., Ste. 1150
Bethesda, Maryland 20814
Counsel for Plaintiff L&L Construction Associates, Inc.

Val S. McWhorter, Esq.
Edmund M. Amorosi, Esq.
SMITH, PACHTER, MCWHORTER & ALLEN, PLC
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Counsel for Defendant Slattery Skanska, Inc.