IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| L&L CONSTRUCTION ASSOCIATES, INC.<br><br>Plaintiff,<br><br>v.<br><br>SLATTERY SKANSKA, INC.<br><br>Defendant. | Case No. 05-CV-01289<br>Judge Lamberth |

**REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Slattery Skanska ("Slattery") files this Reply in support of its Motion to Dismiss the Complaint of L&L Construction Associates, Inc. ("L&L") for failing to state a claim under Federal Rule of Civil Procedure 12(b)(6). In short, Defendant avers that Plaintiff has not pled a valid claim for breach of contract. In support thereof, Defendant states the following:

I.  **Introduction and Summary**

Plaintiff filed with the Court a single-count action in which the Plaintiff asserts that Defendant breached an "Agreement" dated October 3, 2001. In the face of Slattery's Motion to Dismiss, L&L has now contended that, rather than relying on that poorly defined "Agreement," its action is actually comprised of "many, many documents." Plaintiff's Opposition Memorandum, p. 15. (hereinafter "Opp. at p. __"). Central to resolving this dispute is an examination of these "many, many documents" to divine what document, if any, truly gives rise to its cause of action, and the effect of the document once this determination is made. Based on information newly revealed in the Opposition,

Slattery avers that (1) L&L's original Complaint as filed failed to disclose the true nature of its action and (2) the dispute is governed by the Subcontract executed by Plaintiff and SL, a Joint Venture, and that L&L's particular cause of action as filed is barred by the Subcontract's merger clause.[1]

## II. L&L's Opposition Confirms That The Complaint Lacked Sufficient Facts and Grounds to Support a Claim for Breach of Contract

Slattery maintains that the Complaint failed to provide sufficient notice of the grounds upon which L&L's claim would be based. In fact, L&L's opposition, rather than clarify the issues, accomplished nothing more than further confusion.

L&L attacked Slattery's argument by mocking Slattery's reasonable assumption that L&L based its claim on a document dated October 3, 2001 (the "October 3" document). Opp. at p. 15. Slattery's assumption simply reflected the statements contained in L&L's own Complaint, in which L&L expressly based its claim on "an agreement dated October 3, 2001 (the 'Agreement')." Complaint ¶¶ 8, 17-18. Slattery was forced to make this assumption because the Complaint was not sufficiently specific or precise in stating the grounds giving rise to its cause of action.

In the face of Slattery's argument that L&L's claim lacked merit, L&L has now modified its position and decided that its action relies more loosely on a collection of materials, described simply by L&L as "many, many documents." Opp. at p. 15. This

---

[1] Given L&L's new-found reliance on the Subcontract as a basis for its cause of action as announced in its Opposition, Slattery intends to move the Court further to dismiss L&L's claim for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) as the Subcontract contains a forum selection clause expressly agreed to by the parties that calls for jurisdiction only in the State of New York, governed by New York law. See Exhibit 1, Subcontract Article 31. Slattery will submit this new grounds for dismissal shortly by separate motion. L&L partially noted the existence of Article 31 in its Opposition in passing, but failed to include any mention of the forum selection clause contained in the same paragraph. Opp. at p. 5, n.2. New York enforces forum selection clauses. See Capital Natl. Bank of New York v. McDonald's Corp., 625 F.Supp. 874, 880 (S.D.N.Y. 1986). Slattery thus avers that the law of New York governs the entire dispute.

new inventory of "many, many documents" on which L&L now asserts is what it truly meant in its Complaint includes, per the Opposition, the following documents: (1) the one-page October 3, 2001 document; (2) a Subcontract between L&L and SL, a Joint Venture,[2] ("SL"); (3) a prime contract between WMATA[3] and SL to which L&L was not a party; and (4) the RFP issued for the project by WMATA. Opp. at p. 15. Even following L&L's lengthy discussion of the ways in which these "many, many documents" allegedly apply to this action, the fact remains that the Complaint as filed does not allege sufficient facts allowing Slattery to determine the actual basis of L&L's claim.

Slattery contends that L&L failed to allege any casual relationship whatsoever between the documents referenced and its purported claim. Simply referencing documents in a complaint in such a haphazard fashion without linking them to a cause of action is deficient pleading. As stated by Wright & Miller, "[t]he rules require the pleader to disclose adequate information about the basis of the claim for relief as distinguished from a bare averment that the pleader wants relief and is entitled to it." Federal Practice & Procedure, Federal Practice Deskbook, § 72. The rules require that the Plaintiff give to the Defendant "fair notice of what the Plaintiff's claim is and **the grounds upon which it rests.**" Conley v. Gibson, 355 U.S. 41, 48 (1957) (emphasis added). Even assuming arguendo the truth of L&L's assertions in the Opposition that its claim relied on "many, many" documents, the Complaint as filed failed to give fair notice of L&L's actual claim and the grounds upon which it purportedly rests.

---

[2] SL, a Joint Venture, is the party that contracted with L&L, not Slattery, as erroneously alleged by L&L. SL is a Joint Venture comprised of Slattery Skanska, Inc. of New York and Lane Construction Corporation of Connecticut.
[3] WMATA is the Washington Metropolitan Area Transit Authority.

3

In fact, absent the Motion to Dismiss filed by Slattery, L&L would not have revealed its reliance on the "many, many" documents upon which it now purportedly bases its claim. More importantly, L&L's Complaint itself does not condition or otherwise base any relief on this list of documents, despite its assertions in the Opposition. The plain language of the Complaint alleges that "Slattery breached the terms of the **Agreement**" defined in the Complaint as "an agreement dated October 3, 2001." Complaint ¶¶ 8, 17-18 (emphasis added). Even despite that statement, L&L now raises the notion in its Opposition that it did not rely on the "document" dated October 3, 2001, but rather an amorphous agreement of the same date. Opp. at p. 15. L&L's effort to wrap its claim in this newly manufactured list of "many, many documents" reflects nothing more than L&L's well-founded concern that Slattery's Motion to Dismiss properly evaluated the Complaint as-filed.

For the reasons stated herein, and in its Motion to Dismiss and accompanying Memorandum of Law, Slattery asserts that the Complaint does not comply with Fed. R. Civ. P. 8 and should be dismissed on this basis.

### III.     The Subcontract's Merger Clause Precludes L&L's Reliance On The October 3, 2001 Document, Thus Its Claim Must be Dismissed

Based on L&L's newly contrived explanation of its Complaint as stated in its Opposition, Slattery now understands that L&L intends not to base its claim solely on the October 3 document, which Slattery has maintained is not an enforceable agreement, but also on the "many, many documents" referenced above and only obliquely referenced in the Complaint.

In so doing, L&L has placed these "many, many documents" and their contents squarely before the Court. Slattery is thus within its rights to rely on these documents in

support of its Motion to Dismiss, and the Court is within its authority to consider these documents in ruling on Defendant's Motion to Dismiss. See 2 MOORE'S FEDERAL PRACTICE, §12.34[2] (3rd ed.). Relying on Fed. R. Civ. P. 10(c), courts consider documents attached by defendants to a motion to dismiss as part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Barnum v. Millbrook Care Limited Partnership, 850 F. Supp. 1227 (S.D.N.Y. 1994).

In addition to citing these "many, many documents", L&L also introduces many, many new facts not pled in its Complaint into its Opposition in its attempt to survive this motion to dismiss, a practice contrary to the federal rules. For example, L&L's Complaint does not allege that the Subcontract includes any agreement that Slattery would provide more work to L&L. Yet the Opposition alleges just that. Opp. at pp. 17-18. Plaintiff does not allege in its Complaint that the Subcontract contained any representation that L&L should expect more work, as L&L now asserts in its opposition motion. See Compl. ¶ 12; Opp. at pp. 17-18. The Complaint merely states that the Subcontract is for an amount less than what L&L expected. Id., ¶ 12. L&L's defense that its cause of action is based on "many, many documents" is also a new fact not alleged in the Complaint. Opp. at 15, 19. There is simply no discussion or allegation in Plaintiff's Complaint to support its revisionist assertion that its claim was based on these "many, many documents." Mere references to documents do not equate to pleading a coherent theory of recovery.

Not only is the Court not obligated to rely on any new allegations of fact not included in the Complaint, it is precluded from doing so. In passing judgment on the sufficiency of a complaint, the Court is limited to the allegations contained within the

5

pleadings. 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (3d. ed). "The Court may not, for example, take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." Id., (citing Harrell v. United States, 13 F.3d 232, 236 (7th Cir. 1993) ("a plaintiff may not amend his complaint by a brief that he files in the district court or the court of appeals").

To assist the Court in its resolution of this Motion, Defendant attaches a copy of the one-page October 3, 2001 document as Exhibit 2, and, an excerpt from the SL/L&L Subcontract's Terms and Conditions relating to the forum selection clause (Article 31) and the merger clause (Article 32) as Exhibit 1. Despite Plaintiff's puzzling comment, which it relegated to a footnote, that attaching such key documents would "unnecessarily burden" the Court,[4] Defendant believes not only that the Court is quite capable of absorbing a one-page document and a Subcontract, but that having such material at its disposal will aid the Court in its disposition of this matter.

### A. The October 3, 2001 Document

As noted above, the October 3 document was, according to L&L's Complaint, the only agreement purportedly breached and giving rise to this action. Absent the October 3 document, the purported agreement between these two parties disappears. Slattery thus reasonably concluded in its Motion to Dismiss and accompanying Memorandum of Law that the October 3 document is the only record that could possibly give rise to L&L's claim for alleged lost profits based on alleged lost work outlined at Complaint ¶13, a truly speculative claim to begin with. See Hadley v. Baxendale, 156 Eng Rep. 145 (1854); Kenford Co., Inc. v. Erie County, 73 N.Y.2d 312, 537 N.E.2d 176 (1989).

---

[4] Opp. at pp. 20-21, n.7.

Slattery reiterates its assertion as stated in its Memorandum of Law that the October 3 document is, at best, merely an "agreement to agree" and not an enforceable contract. See Def.'s Mem. at pp. 4-6. Thus, L&L has not stated a claim upon which relief can be granted in the first instance.

### B. The Subcontract Between SL and L&L Governs This Dispute

Notwithstanding the inadequately pled allegations contained within its Complaint, L&L now asserts that another document in fact gives rise to its action. That document, the Subcontract agreed to by SL and L&L, contains a merger clause that precludes any reliance on documents outside the four corners of the subcontract. The Subcontract clause, entitled "Complete Agreement and/or Oral Modification," states:

> Except as expressly set forth herein, there have been no representations by either party to the other to induce execution of this Subcontract, and **all prior negotiations and understandings with respect to the subject matter are merged herein**. This Subcontract shall be binding on and inure to the benefit of the successors and assigns of the respective parties. This Subcontract cannot be amended or waived except by written instrument signed by the parties or their respective successor in interest.

Ex. 1, Subcontract, Article 32 (emphasis added.). This merger clause is unambiguous and comprehensive, covering all prior understandings and negotiations, including the October 3 document.

The October 3 "agreement to agree" was a prior negotiation or understanding, to paraphrase the merger clause. Documents and discussions of any and all types that are inconsistent with the terms of the Subcontract, such as the October 3 document, are excluded by the merger clause. Where the language of an agreement has a clear and definite meaning on its face, the law compels enforcement of the agreed terms. Thayer v. Dial Indus. Sales, Inc., 85 F. Supp.2d 263, 269 (S.D.N.Y. 2000). "Issues of contract

7

interpretation are generally matters of law and therefore suitable for disposition on a motion to dismiss." Id. (citation omitted). The language of the merger clause is clear on its face - all prior negotiations and understandings with respect to the subject matter of the agreement were merged into the Subcontract. Thus, the October 3, 2001 "agreement to agree" on the same subject matter as the Subcontract and which preceded formation of the Subcontract is superseded by the Subcontract, and thus L&L's claim as plead must fail.

The Subcontract itself supports such a finding. First, it was executed on September 26, 2003, nearly two years after the October 3 document, by authorized representatives for SL and L&L. The October 3 document is thus not contemporaneous and was overridden by L&L's own representative. The parties to the Subcontract are the same as those who signed the October 3 document and the type of work "underground utilities" is largely unchanged. The parties also bargained for a price of roughly $1.1 million. Notably, the Complaint does not allege that the Subcontract promises any work above and beyond the terms of the Subcontract, and the Subcontract contains no such promises. In fact, as noted above, the Subcontract expressly renounces any such additional promises, stating "there have been no representations by either party to the other to induce execution of this Subcontract." Ex. 1, Subcontract, Article 32. The parties also bargained for a Subcontract that contains a merger clause. What the Subcontract represents is a commercial agreement negotiated at arms-length in which L&L agreed to perform a defined and well-articulated scope of work related to underground utilities for a sum certain, payable as defined in the agreement, and agreed, in exchange for payment, to relinquish any other terms or conditions to which it might

8

otherwise have been entitled. In other words, the relevance, if any, of the October 3 document to the Parties' relationship prior to the execution of the Subcontract was vitiated and released when L&L signed the Subcontract.

Slattery's position in this regard is well-established. Under the law of New York, where the parties to an agreement have executed a completely integrated written agreement, that agreement supersedes all other understandings and agreements with respect to the subject matter of the agreement between the parties, whether consistent or inconsistent. DDCLAB Ltd. v. Dupont, 2005 U.S. Dist. LEXIS 2721, *10 (S.D.N.Y.) (dismissing complaint for failing to state a claim based on merger clause); Thayer v. Dial Indus. Sales, Inc., 85 F. Supp.2d 263, 269 (S.D.N.Y. 2000) (granting motion to dismiss in contract claim finding that subsequent contract concerning the same subject matter supersedes the former agreement and is barred by the merger clause); Barnum v. Millbrook Care Ltd. Partnership, 850 F. Supp. 1227 (S.D.N.Y. 1994) (same); Int'l Bus. Mach. Corp. v. Medlantic Healthcare Group, 708 F. Supp. 417, 424 (D.D.C. 1989) ("courts have held that an integrated written contract controls as against any and all prior inconsistent oral agreements or promises.").

In a case analogous to this one, the Fifth Circuit held that a letter of intent signed by the parties to the dispute was subsumed by a formal contract later executed by the parties. Spectators' Commun. Network, Inc. v. Colonial Country Club, 253 F.3d 215, 225-26 (5th Cir. 2001). The plaintiff argued, as in this case albeit obliquely, that the letter of intent was an enforceable agreement in its own right. The defendant argued that the letter of intent was only an agreement to agree and that the formal contract represented the parties' agreement. The Fifth Circuit agreed with the defendant because,

9

as in the instant matter, the contract contained a merger cause, it was much longer and more detailed than the letter of intent, and the contract contained specific terms different from those contemplated in the letter of intent, such as price for example.

The existence of a merger clause is strong evidence that the parties intended to exclude all other terms, conditions, and agreements. A merger clause

> does not incorporate other contracts by reference, rather, a merger clause negates the impact of earlier negotiations and contract drafts, and states that the written contract is the complete expression of the parties' agreement. The presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them. A merger clause, in effect, assures the parties that their entire agreement is memorialized in the written contract, and permits either party to invoke the parol evidence rule to exclude evidence of additional contractual terms not included in the written agreement.

Rosenblum v. Travelbyus.com Ltd., 299 F.3rd 657, 661 (7th Cir. 2002). Against this precedent, the October 3 agreement, regardless of the form taken, is moot and of no moment as it is a well-settled principle of contract law that the presence of a merger clause is strong evidence that the parties intended the writing to be the complete and exclusive agreement between them. Thus, when interpreting merger clauses, a new agreement between the same parties on the same subject matter, such as the Subcontract, supersedes an older understanding. Ottawa Office Integration, Inc. v. FTF Business Systems, Inc.,132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001). This principle is quite apt in this case. Even granting L&L's position that the October 3 document is enforceable, as we must at this stage, the Subcontract trumps the document as a matter of law because it is the formal document memorializing the parties' ultimate agreement. As the Subcontract merged the all prior understandings between Slattery and L&L, to the extent

that any existed, L&L's claim as plead does not rely on an enforceable agreement and should be dismissed.

### C. WMATA's RFP for the New York Avenue Station and the Prime Contract Between WMATA and SL Confers No Right of Action on L&L

With respect to the third and fourth documents – the RFP for the project and the prime contract between SL and WMATA – L&L erroneously claims that these documents are part of the "many, many documents" giving rise to its claim. Opp. at pp. 18-19. Unfortunately for L&L, neither the RFP nor the prime contract confer any right of action for breach of contract on an entity such as L&L, which as a subcontractor to SL, is not a party to the prime contract, and thus lacks privity. See Capital Nat. Bank of New York v. McDonald's Corp., 625 F. Supp. 874, 882-83 (S.D.N.Y. 1986) (rejecting bank's alleged contract claim for lack of privity stating "[a]bsent a contractual relationship there can be no contractual remedy"); MBL Constr. Corp. v. King World Prods., Inc., 98 F. Supp. 2d 492, 495 (S.D.N.Y. 2000) (rejecting subcontractor's claim for payment from owner for lack of privity). The prime contract between SL and WMATA spells out the rights and obligations vis a vis the two parties, but does not confer any right on L&L to enforce the terms against WMATA or SL. Slattery avers that the only document that confers any right of action on L&L is the Subcontract, but for the reasons discussed above, the Subcontract's merger clause compels dismissal of this action.

### CONCLUSION

For the foregoing reasons and for the reasons stated in Defendant's Motion to Dismiss and accompanying Memorandum, Defendant Slattery respectfully requests that this Court dismiss Plaintiff L&L's Complaint with prejudice.

11

Respectfully submitted,

*[signature: Edmund M. Amorosi]*

Val S. McWhorter (D.C. Bar No. 91231)
W. Stephen Dale
Edmund M. Amorosi (D.C. Bar No. 482765)
SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C.
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312
Email to be noticed: eamorosi@smithpachter.com

*Attorneys for Defendant Slattery Skanska*

Dated this 12th day of August 2005.

## CERTIFICATE OF SERVICE

I hereby certify that on August 12, 2005, I electronically filed the foregoing Reply Brief in Support of Slattery's Motion to Dismiss with the Clerk of the District Court using its CM/ECF system. Service of these papers was perfected electronically, as provided for under LCvR 5.4(d), on the following counsel for the plaintiff:

> Bradshaw Rost
> Tenenbaum & Saas, P.C.
> 4330 East-West Highway, Suite 1150
> Bethesda, Maryland 20814

_____
Edmund M. Amorosi