### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| L&L CONSTRUCTION ASSOCIATES, INC. | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 05-CV-01289 |
| SLATTERY SKANSKA, INC. | ) ) | Judge Lamberth |
| Defendant. | ) ) ) | |

### DEFENDANT SLATTERY SKANSKA'S MOTION TO DISMISS

Defendant Slattery Skanska, Inc., by counsel, moves the Court to dismiss the above

captioned action pursuant to Rules 12(b)(1), 12(b)(3), or 12(b)(6) of the Federal Rules of

Civil Procedure for the reasons set forth in the accompanying Memorandum of Law. This

Motion is made based on the Federal Rules of Civil Procedure, the accompanying

Memorandum, the papers and pleadings on file herein, and any oral argument that the Court

deems necessary.

DATED this 29th day of August, 2005.

Respectfully submitted,

*Edmund M. Amorosi*

Val S. McWhorter (D.C. Bar No. 91231)
W. Stephen Dale
Edmund M. Amorosi (D.C. Bar No. 482765)
SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C.
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: (703) 847-6300
Facsimile: (703) 847-6312
*Attorneys for Slattery Skanska, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on August 29, 2005, I electronically filed the foregoing Motion to

Dismiss and accompanying papers including a Memorandum of Law and Proposed Order,

with the Clerk of the District Court using its CM/ECF system.  Service of these papers was

effected electronically, as provided for under Local Civil Rule 5.4(d), on the following:

> Bradshaw Rost
> Tenenbaum & Saas, P.C.
> 4330 East-West Highway, Suite 1150
> Bethesda, Maryland 20814

Edmund M. Amorosi

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| L&L CONSTRUCTION ASSOCIATES, INC. | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | Case No. 05-CV-01289 Judge Lamberth |
| SLATTERY SKANSKA, INC. | ) ) ) | |
| Defendant. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF SLATTERY'S MOTION TO DISMISS

Defendant Slattery Skanska, Inc. ("Slattery") moves this Court to dismiss the First

Amended Complaint[1], ("First Amended Complaint" or "FAC ¶__") filed by Plaintiff

L&L Construction Associates, Inc. ("L&L") under Federal Rule of Civil Procedure

12(b)(1) for lack of subject matter jurisdiction, Rule 12(b)(3) for improper venue, and

Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

In short, Slattery avers that this Court: (1) does not have jurisdiction to hear this

dispute as the subcontract governing this dispute contains a forum selection clause

specifying the State of New York as the forum and governing law; (2) that the

Subcontract's merger clause prevents consideration of any alleged previous agreements;

---

[1] Plaintiff moved this Court for leave to amend its Complaint by motion under Fed. R. Civ. P. 15 dated August 10, 2005 (DI #7). Slattery's reading of Rule 15 is that Plaintiff's filing was unnecessary as leave to amend at this stage of the proceeding is a matter of right as Slattery has not yet filed a responsive pleading. *See Adams v. Quattlebaum*, 219 F.R.D. 195 (D.D.C. 2004). Consistent with *Adams*, Slattery files this Motion to Dismiss against the First Amended Complaint, which superseded the original Complaint. Slattery presumes that its previous Motion to Dismiss currently pending against the original Complaint will be likewise superseded by this Motion to Dismiss the First Amended Complaint. *Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003) ("denying without prejudice all pending motions pertaining to the original complaint").

and (3) alternatively, that even if the Court does have jurisdiction, the First Amended

Complaint does not state a claim for breach of contract upon which relief can be granted.

## SUMMARY OF ARGUMENT

As discussed in more detail below, the Subcontract executed between Plaintiff

L&L and a joint venture known as SL, of which Defendant Slattery is a member[2],

contains a forum selection clause agreed to by the parties that calls for all causes of action

arising under this Subcontract to be filed exclusively in the Supreme Court of the State of

New York, County of Queens. The Subcontract also contains a merger clause that

provides for the Subcontract to supersede all prior agreements, negotiations, or

understandings between the parties that are inconsistent with the terms of the

Subcontract. The only remedy-granting document or agreement that exists between these

two parties is the Subcontract and Plaintiff's claim is not cognizable under the

Subcontract. Thus, L&L's reliance on any prior agreement as the basis of its claims is

barred by the merger clause.

Alternatively, if the Court finds that the case is not governed by the forum

selection clause or the merger clause, Slattery avers that any purported prior agreement is

not an enforceable agreement under applicable law and thus fails to state a claim for

breach of contract.

## STATEMENT OF RELEVANT FACTS

Defendant Slattery, a New York corporation, is a member of a joint venture

formed between itself and Lane Construction Corporation, a Connecticut corporation, to

---

[2] For the purposes of this Motion and without waiving any right to assert that other parties should be joined in this action, Slattery takes as well-plead L&L's allegations that any cause of action under the arguments referenced herein lie against Slattery and not against the joint venture.

perform work for the Washington Metropolitan Area Transportation Authority

("WMATA"). FAC, ¶ 10. The name of the joint venture is SL, a joint venture ("SL").[3]

WMATA awarded a prime contract to SL for work to build the New York

Avenue Metro station. FAC ¶ 10. Prior to award of the prime contract, L&L alleges that

L&L and Slattery had previously entered into a preliminary agreement by letter dated

October 3, 2001 as part of the bidding process (the "October 3 letter"). FAC ¶ 8. Once

WMATA awarded the contract to SL, SL and L&L entered into a contract (the

"Subcontract"). FAC ¶ 12.

Although not alleged by L&L, the Subcontract contains a forum selection clause

and a merger clause. A true and accurate copy of the Subcontract page containing the

forum selection (Article 31) and merger clauses (Article 32) is attached at Exhibit 1.

The forum selection clause states in full as follows:

> The interpretation of this Subcontract, including any alleged breach
> hereof, shall be governed by the laws of the State of New York. Any
> action at law or equity commenced by Subcontractor or **"SL"**
> **JOINT VENTURE** on causes of action arising under this
> Subcontract shall be filed, and venue shall lay, exclusively in the
> Supreme Court of the State of New York, County of Queens, before
> a Justice of said Court. The Parties hereto hereby waives the right to
> trial by jury. Further, the parties hereto hereby submit to the
> jurisdiction of said Court in all matters arising under this
> Subcontract."

The merger clause, entitled "Complete Agreement and/or Oral Modification,"

states in full as follows:

> Except as expressly set forth herein, there have been no
> representations by either party to the other to induce execution of
> this Subcontract, and **all prior negotiations and understandings**
> **with respect to the subject matter are merged herein**. This
> Subcontract shall be binding on and inure to the benefit of the

---

[3] Slattery has recited operative facts from the First Amended Complaint for the purposes of this Motion only.

> successors and assigns of the respective parties. This Subcontract
> cannot be amended or waived except by written instrument signed
> by the parties or their respective successor in interest.

(emphasis added). The forum selection clause bars suit in this court and the merger

clause dooms plaintiff's claim as plead before this Court.

## STANDARD OF REVIEW

For purposes of a motion to dismiss, the standard of review is well-established:

(1) the complaint as amended is construed in the light most favorable to the plaintiff; (2)

its allegations are taken as true; and (3) all reasonable inferences that can be drawn from

the pleadings are drawn in favor of the pleader. *Scheuer v. Rhodes*, 416 U.S. 232 (1974).

## ARGUMENT

**I.      The Subcontract's Forum Selection Clause Requires Dismissal of this
         Action**

### a.  The Subcontract's Forum Selection Clause Governs This Dispute

The Subcontract between SL and L&L establishes the rights and remedies

available to each party.

Article 31 establishes that any and all disputes arising under the Subcontract shall

be governed by the law of New York and tried in a Queens County New York courtroom

before a Justice of said Court. Because the allegations raised by L&L in its Complaint

cannot be supported without relying on the Subcontract expressly or implicitly, the First

Amended Complaint, by definition, relies on the Subcontract and invokes Article 31.

FAC ¶¶ 12-13. Accordingly, the dispute referenced therein is covered by the forum

selection clause. Slattery thus moves the Court to dismiss this action under Fed. R. Civ.

P. 12(b)(1), 12(b)(3), or 12(b)(6).[4]

### b. A Strong Presumption Exists in Favor of Enforcing Forum Selection Clauses Under Well-Settled Supreme Court Precedent

The forum selection clause is unambiguous and broadly worded to preclude

dispute resolution in any forum other than a New York state court sitting in Queens, the

same area where Slattery's principal place of business is located.[5]  The Supreme Court has

stated its strong preference for enforcing forum selection clauses in *Carnival Cruise Lines v.*

*Shute*, 499 U.S. 585 (1991) (enhancing presumption in favor of forum selection clauses

by enforcing one printed on standard form passenger ticket even though the party

resisting it was in an uneven bargaining position and lived in the State of Washington,

whereas the forum selection clause required suit in Florida).  Beginning with *The Bremen*

*v. Zapata Offshore Co.*, 407 U.S. 1 (1972) as strengthened by *Carnival* and in diversity

cases such as *Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988), forum

selection clauses are now firmly established as prima facie valid.  A presumption in favor

of enforcement exists requiring the resisting party to show that enforcement would be

unreasonable under the circumstances.  2*215 Fifth Street Assoc. v. U-Haul Int'l.*, 148

F.Supp. 2d 50 (D.D.C. 2001) (*citing The Bremen, supra*).

---

[4] Authority for relying on these various grounds for dismissal is provided by the following: *J.B. Harris, Inc. v. Razei Bar Indus., Ltd.*, 1999 U.S. App. LEXIS 8577, *_ (2d Cir. 1999) (stating that motion to dismiss relying on forum selection clause is properly founded upon Fed. R. Civ. P. 12(b)(6), not 12(b)(3)); *Lambert v. Kysar*, 983 F.2d 1110, 1112, n.1 (1st Cir. 1993) (noting that proper procedural vehicle to enforce forum selection clause is Rule 12(b)(6)); *Seward v. Devine*, 888 F.2d 957 (2d Cir. 1989) (affirming dismissal on basis of forum selection clause based on 12(b)(1)); *Commerce Consultants Int'l., Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697 (D.C. Cir. 1989) (affirming dismissal under Rule 12(b)(3)); *Marra v. Papandreou*, 216 F.3d 1119 (D.C. Cir. 2000) (without resolving issue, court stated that appropriate procedural basis for giving effect to a forum selection clause is a "creature that has evaded precise classification.")
[5] The selection of the County of Queens, New York as the forum and New York as the governing law thus has some rational connection to the parties and the selection of Queens as the forum is justified on this basis. *See Gray v. American Express Co.*, 743 F.2d 10 (D.C. Cir. 1984) (forum should bear some substantial relation to the parties or their transaction).

Forum selection clauses are enforced because they serve a useful purpose by limiting the fora in which an entity with wide-ranging operations such as a cruise line or a civil engineering firm such as Slattery, which operates both nationally and internationally, is forced to litigate. A forum selection "clause establishing ex ante the forum for dispute resolution has the salutary effect of dispelling any confusion about where the suits arising from the contract must be brought, sparing litigants the time and expense of pre-trial motions to determine the correct forum." *Carnival Cruise Lines, Inc.*, 499 U.S. at 590.

A party seeking to defeat a forum selection clause carries the burden of demonstrating either that enforcement would be unreasonable and unjust, the clause was somehow tainted by fraud, or strong public policy of the forum in which suit is brought would be contravened by enforcement. *2215 Fifth Street Assoc. v. U-Haul Int'l.*, 148 F.Supp. 2d 50 (D.D.C. 2001). New York and the District of Columbia routinely enforce forum selection clauses. *See, e.g., Unity Operations, Inc. v. Trafcon Indus. Inc.*, 137 F. Supp. 2d 108, 112 (E.D.N.Y. 2001) (stating that courts enforce forum selection clauses unless doing so would be unjust or unreasonable); *Forrest v. Verizon Commun., Inc.* 805 A.2d 1007, 1010 (D.C. 2002) (concurring with the trend begun with *The Bremen, supra*, affording a presumption to forum selection clauses and adopting the modern rule in favor of such clauses). L&L does not allege in its First Amended Complaint any facts that implicate, much less approximate, the high standards required to overcome the presumption in favor of forum selection clauses set forth in case law, nor could it. Article 31 is a reasonable means of bringing certainty to one aspect of the litigation process.

"Moreover, 'in light of present-day commercial realities and expanding international trade' the party seeking to avoid the forum selection clause bears the burden of demonstrating that 'trial in the contractual forum will be [so] gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court.'" *2215 Fifth Street Assoc. v. U-Haul Int'l.*, 148 F.Supp. 2d 50, 54 (D.D.C. 2001) (*quoting Overseas Partners, Inc. v. Progen Musavirlik Ve Yonetim Hizmetleri, Ltd.*, 15 F. Supp. 2d 47, 54 (D.D.C. 1998).

Neither L&L's First Amended Complaint nor facts upon which judicial notice may be taken, such as relative ease of travel between the two forums approach the high standards of grave difficulty jeopardizing trial required to defeat enforcement. Courts have enforced forum selection clauses imposing far greater burdens on plaintiffs in L&L's situation than litigating in New York, such as those required by *Carnival Cruise Lines, Inc.*, *supra*, or requiring suit in a foreign land. *See Commerce Consultants Int'l., Inc. v. Vetrerie Riunite, S.p.A.*, 867 F.2d 697 (D.C. Cir. 1989) (enforcing choice of forum clause specifying Verona, Italy as the appropriate court despite concerns about fairness of trial under Italian rules of discovery). Moreover, L&L will not be deprived of its day in court, just compelled to fulfill the terms of its agreement.

L&L negotiated a Subcontract containing a forum selection clause and a duly authorized representative for L&L signed the document. If L&L had any objections to the forum selection clause, the time to raise them was before it signed the Subcontract and not before this Court two years after the fact. As the language of this clause is clear, there is no need to resort to parol evidence to determine the intent of the parties. *Commerce Consultants Int'l., Inc.*, 867 F.2d at 699. Thus, Plaintiff's decision to file its

action in federal court in the District of Columbia rather than in New York state court in Queens is directly at odds with the plain language of the Subcontract, which its cites in its own Amended Complaint as giving rise to its claim against Slattery (FAC ¶¶ 12-13).

The forum selection clause in the Subcontract was not hidden or cryptically drafted. It was set-off in its own paragraph with its own title, in the center of a page of the Subcontract's terms and conditions. *See* Exhibit 1. Even if plaintiff alleged at this late date that it had neglected to read or understand the import of the forum selection clause, their failure is no excuse *Baltimore & Ohio R.R. Co. v. Morgan*, 35 App. D.C. 195 (D.C. 1910) (stating that it is the duty of contracting parties to acquaint themselves with terms before signing). This is especially the case where, as here, both parties are sophisticated commercial parties operating at arms-length.

Allowing Plaintiff to escape the forum selection clause would be unjust to Slattery by, *inter alia:* (1) condoning Plaintiff's blatant disregard for the clause; (2) allowing it to bypass its freely negotiated bargain by picking and choosing among the terms that it wishes to enforce and those that it does not; and (3) forcing Slattery to litigate in a forum to which it did not agree. *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 3508 (S.D.N.Y. 2004). L&L has not plead any objection to the forum selection clause in its First Amended Complaint, and it apparently did not object to the clause when it signed the Subcontract. Thus, Slattery urges the Court to enforce the clause as written and dismiss this action accordingly.[6]

---

[6] Unlike a typical action for improper venue under 28 U.S.C. § 1404 or § 1406, dismissal is warranted because this case cannot be moved to another federal district as the parties agreed to litigate in New York State court. *See Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 3508, *21-22 (S.D.N.Y. 2004) (in dismissing case based on forum selection clause, court stated that federal courts do not have the power to transfer a case to state court unless on remand).

### c.  The Broadly-Worded Forum Selection Clause Covers the Instant Dispute

The forum selection clause is sufficiently broad to encompass the claim asserted by Plaintiff. The clause states in relevant part: "Any action at law or equity commenced by Subcontractor ... on causes of action arising under this Subcontract shall be filed, and venue shall lay, **exclusively** in the Supreme Court of the State of New York, County of Queens." Subcontract, Article 31 (emphasis added). The use of the term "exclusively" offers strong indicia that this is not a permissive clause and that the parties meant to adjudicate their disputes only in the specified place. The use of the terms "any action at law or equity" is broad as well, encompassing the breach of contract count alleged in its original complaint as well as the counts of promissory estoppel and unjust enrichment added in its First Amended Complaint.

Count I of L&L's First Amended Complaint alleges that Slattery breached a contract. The only contract that exists between the parties is the Subcontract, to the extent that Slattery as a JV partner is individually bound. L&L equivocates between the Subcontract and the October 3 letter in its First Amended Complaint as to the basis for its claim, seemingly trying to have it both ways. The rights asserted by Plaintiff arise from the fact that the amount included in the Subcontract was less than the amount L&L believes it was entitled to, thus its rights arise out of or relate to the Subcontract. To the extent that L&L relies on the October 3 letter, its position is untenable and unsupportable as the Subcontract contains a merger clause that excludes reliance on any previous agreement between the parties, assuming *arguendo* that the October 3 letter is an agreement in the first place, as discussed in further detail in Section II below. That leaves the Subcontract as the only viable document.

9

Notwithstanding the fact that Plaintiff's counts alleging promissory estoppel and unjust enrichment are precluded by the merger clause, courts have held as a general matter that a forum selection clause in a contract may still be enforced even if the action involves claims other than breach of contract, especially when the clause is broad and the dispute arises out of a contract. *Warnaco, Inc. v. VF Corp.*, 844 F.Supp. 940, 947 (S.D.N.Y. 1994) (noting that "courts have read contractual forum selection clauses to encompass claims beyond breach of the contract containing the clause"); *Crescent Int'l., Inc. v. Avatar Communities, Inc.*, 857 F.2d 943, 955 (3d Cir. 1988) (stating "although only one of the [party's] claims was based on a breach of contract theory, pleading alternate non-contractual theories is not enough to avoid a forum selection clause if the claims asserted arise out of the contractual relation and implicate the contract's terms."). By its terms, the forum selection applies broadly to all issues arising under the Subcontract, including issues of interpretation.

In addition, the forum selection clause encompasses equitable allegations such as unjust enrichment and promissory estoppel, even thought these legal theories do not lie in cases such as this one where there is a contract under which a breach, if proven, will provide a remedy. *EBC I, Inc. v. Goldman Sachs & Co.*, 832 N.E.2d 26 (N.Y. 2005) (finding that "plaintiff fails to state a cause of action for unjust enrichment as the existence of a valid contract governing the subject matter generally precludes recovery in quasi contract for events rising out of the same subject matter."); *Mgmt. Inv. Funding Ltd. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 2000 U.S. Dist. LEXIS 1224, at *30 (S.D.N.Y. Feb. 9, 2000) (promissory estoppel is a substitute for consideration which, if

present, would have created an enforceable contract). Because the Subcontract is present in this case, neither theory is applicable.

L&L's First Amended Complaint, at its simplest, arises out of its execution of the Subcontract for an agreed amount. As such, the claim implicates the Subcontract and its forum selection and merger clauses. If L&L does not rely on the Subcontract, there is no other "agreement" upon which its claim can be based and it should be dismissed. Thus, Slattery avers that dismissal of this action is warranted under Fed. R. Civ. P. 12(b)(1), 12(b)(3), and 12(b)(6).

**II.     The Subcontract's Merger Clause Precludes L&L's Reliance On The October 3, 2001 Document, Thus Its Claim Must be Dismissed**

### a.   The October 3, 2001 Agreement to Agree

Slattery, acting on behalf of SL, and L&L entered into what at best what might be considered a preliminary agreement by letter dated October 3, 2001 relating to work that L&L would perform if WMATA awarded the New York Avenue contract to SL. When the parties later executed the Subcontract, they expressly agreed, without limitation, to supersede "all prior negotiations and understandings with respect to the subject matter" by the terms of the Subcontract. Accordingly, Slattery avers that the October 3 letter, to the extent it ever bound the parties, was superseded once the parties executed the Subcontract and cannot form the basis for this or any suit.

### b.   The Subcontract Between SL and L&L Governs This Dispute

In its First Amended Complaint, L&L seeks relief based on a purported "breach of an agreement dated October 3, 2001" to perform certain work on the New York Avenue Metro Station project. FAC, ¶ 17-18. However, the Subcontract agreed to by SL and L&L subsequent to the alleged agreement referenced in the First Amended

11

Complaint contains a merger clause precluding reliance by L&L or SL on any documents outside the four corners of the Subcontract. As stated above, the merger clause is applicable even if L&L did not expressly base its action on the Subcontract, by its terms supersedes any prior agreement.

The merger clause reproduced in the Statement of Relevant Facts section above is unambiguous and comprehensive, covering all prior understandings and negotiations, including the October 3, 2001 letter. The October 3 "agreement to agree" was, to paraphrase the merger clause, a prior negotiation or understanding. Documents and discussions of any and all types that are inconsistent with the terms of the Subcontract, such as the October 3 document, are excluded by the merger clause. Moreover, the broad language of the provision supports a finding that the parties sought a comprehensive clause to exclude not only all prior and formalized agreements, but also any and all prior understandings. Where the language of an agreement has a clear and definite meaning on its face, the law compels enforcement of the agreed terms. *Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp.2d 263, 269 (S.D.N.Y. 2000). "Issues of contract interpretation are generally matters of law and therefore suitable for disposition on a motion to dismiss." *Id.* (*citation omitted*). Thus, the October 3, 2001 "agreement to agree" covering the same subject matter as the Subcontract, and which preceded formation of the Subcontract by two years is superseded by the Subcontract, and thus L&L's claim as plead must fail.

Slattery's position is firmly supported by the Subcontract itself for several reasons. First, it was executed on September 26, 2003, nearly two years after the October 3 document. The document, in its capacity as an "agreement to agree", is the type of document that would typically be superseded by a final agreement, as it was in this case.

Second, the Subcontract was signed by L&L's own representative with no reservation or other statement indicating that it was anything other than the final agreement. Third, the parties to the Subcontract are the same as those who signed the October 3 document. Fourth, the type of work "underground utilities" remained unchanged between both documents.

Notably, the First Amended Complaint does not allege that the Subcontract promises any work above and beyond the terms of the Subcontract, nor could it as the Subcontract contains no such promises. In fact, as noted above, the Subcontract expressly renounces any such additional promises, stating "there have been no representations by either party to the other to induce execution of this Subcontract." Ex. 1, Subcontract, Article 32.

What the Subcontract represents is a commercial agreement negotiated at arms-length in which L&L agreed to perform a defined scope of work related to underground utilities for a sum certain, payable as defined in the Subcontract. L&L agreed, in exchange for good and valuable consideration, to relinquish any other terms or conditions to which it might otherwise have been entitled. In other words, the Subcontract trumped the October 3 letter. Its relevance, if any, to the Parties' relationship prior to the execution of the Subcontract terminated once L&L signed the Subcontract.

### c.  Merger Clauses Are Well-Established Means of Preventing Disputes of the Type Raised by L&L

The existence of a merger clause is strong evidence that the parties intended to exclude all other terms, conditions, and agreements. A merger clause:

> does not incorporate other contracts by reference, rather, a merger clause negates the impact of earlier negotiations and contract drafts, and states that the written contract is the

> complete expression of the parties' agreement. The presence
> of a merger clause is strong evidence that the parties intended
> the writing to be the complete and exclusive agreement
> between them. **A merger clause, in effect, assures the
> parties that their entire agreement is memorialized in the
> written contract, and permits either party to invoke the
> parol evidence rule to exclude evidence of additional
> contractual terms not included in the written agreement.**

*Rosenblum v. Travelbyus.com Ltd.*, 299 F.3rd 657, 661 (7th Cir. 2002) (emphasis added).

Against this precedent, the October 3 agreement, regardless of the form taken, is moot

and of no moment as it is a well-settled principle of contract law that the presence of a

merger clause is strong evidence that the parties intended the writing to be the complete

and exclusive agreement between them. Thus, when interpreting merger clauses, a new

agreement between the same parties on the same subject matter, such as the Subcontract,

supersedes an older understanding. *Ottawa Office Integration, Inc. v. FTF Business

Systems, Inc.*, 132 F. Supp. 2d 215, 219 (S.D.N.Y. 2001). This principle is quite apt in

this case. Assuming *arguendo* that L&L's position that the October 3 document is

enforceable, the Subcontract trumps the October 3 letter as a matter of law because it is

the formal document memorializing the parties' ultimate agreement. As the Subcontract

merged the all prior understandings between Slattery and L&L, to the extent that any

existed, L&L's claim as plead cannot rely on the October 3 letter.

Under the law of New York, where the parties to an agreement have executed a

completely integrated written agreement, that agreement supersedes all other

understandings and agreements with respect to the subject matter of the agreement

between the parties, whether consistent or inconsistent. *Mercury West A.G., Inc. v. R.J.

Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 3508 (S.D.N.Y. 2004). In *Mercury West*,

a case almost identical to the instant matter, the court applied the merger and forum

14

selection clauses, despite plaintiff's contention that the dispute at issue arose under prior agreements not the later contract. The Court stated:

> The notion that the breach and deceptive business practices claims are based upon prior agreements is fatally flawed by the fact that no prior agreements exist. The [Master Purchase Agreement ("MPA")] contains a merger clause that explicitly establishes that the MPA represents the entirety of [Plaintiff] and [Defendant's] contractual relationship and that any prior agreements are hereby superseded.

*Id.*, at *17.

After reproducing the merger clause, the Court further stated: "This clause, in no uncertain terms, states that no other agreements exist. In addition, case law holds that if one agreement expressly supersedes others, any prior agreements relating to the same subject matter are, by definition, extinguished." *Id.*, at *18 *citing Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990); (*Kreiss v. McCown De Leeuw & Co.*, 37 F. Supp.2d 294, 301 (S.D.N.Y. 1999).

Like the plaintiff in *Mercury West*, L&L appears to allege that the October 3 letter is an agreement separate and apart from the Subcontract. Just as in *Mercury West*, the October 3 letter was superseded by the Subcontract's merger clause and any dispute between the parties is therefore governed by the Subcontract. *See also DDCLAB Ltd. v. Dupont*, 2005 U.S. Dist. LEXIS 2721, *10 (S.D.N.Y.) (dismissing complaint for failing to state a claim based on merger clause); *Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp.2d 263, 269 (S.D.N.Y. 2000) (granting motion to dismiss in contract claim finding that subsequent contract concerning the same subject matter supersedes the former agreement and is barred by the merger clause); *Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227 (S.D.N.Y. 1994) (same); *Int'l. Bus. Mach. Corp. v. Medlantic Healthcare*

*Group*, 708 F. Supp. 417, 424 (D.D.C. 1989) ("courts have held that an integrated written contract controls as against any and all prior inconsistent oral agreements or promises.").

In another case analogous to this one, the Fifth Circuit held that a letter of intent signed by the parties to the dispute was subsumed by a formal contract later executed by the parties. In *Spectators' Commun. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 225-26 (5th Cir. 2001), the plaintiff argued, as in this case, that the letter of intent was an enforceable agreement in its own right. The defendant argued that the letter of intent was only an agreement to agree and that the formal contract represented the parties' agreement. The Fifth Circuit agreed with the defendant because, as in the instant matter, the contract (1) contained a merger cause, (2) it was much longer and more detailed than the letter of intent, and (3) the contract contained specific terms different from those contemplated in the letter of intent, such as price for example in the present case.

L&L has thus presented a pleading that cannot be saved from itself. Whether relying on the Subcontract or the October 3 letter, L&L falls subject to the forum selection or merger clause. Should L&L rely on the only enforceable agreement existing between the parties, the Subcontract, the forum selection clause compels dismissal in favor of the agreed terms. In the alternative, should L&L rely on the October 3 letter, any rights ever arising from the document were extinguished by the Subcontract and the parties' agreement. In short, under either option, L&L's First Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6).

### III.    Alternatively, L&L's First Amended Complaint, Should Be Dismissed Because It Fails to State a Cause of Action

#### a.  Introduction and Request for Relief

In the event that the Court denies the relief requested by Defendant Slattery on either the forum selection or merger clauses discussed in Section I and II above, Slattery alternatively avers that Plaintiff has not stated all facts necessary to state a cause of action under Rule 12(b)(6) for breach of contract.  In short, Plaintiff has not alleged sufficient facts that show the October 3 letter is an enforceable agreement and Count I of its Amended Complaint alleging breach of contract should be dismissed.[7]

#### b.  The Alleged October 3 Agreement is Not An Enforceable Contract in the District of Columbia

L&L asserts that Slattery breached the terms of a purported unspecified agreement without specifying which document was allegedly breached.  L&L's puzzling First Amended Complaint includes references to four documents in its "Statement of Facts", including: (a) the RFP issued by WMATA (FAC ¶ 6, 7, 8, 9); (b) the October 3, 2001 letter (FAC ¶ 8), (c) the Prime Contract between WMATA and SL (neither of whom are parties to this suit) (FAC ¶¶ 8, 9, 10, 11, 13); and (d) the Subcontract between SL and L&L (FAC ¶ 12-13).  Buried within this assortment, L&L states that its assertions in Count I derive from a purported breach of the October 3 letter.  FAC ¶¶ 17-18.  While one can speculate on why L&L might see some benefit in its opaque pleading, Slattery avers that the October 3 letter is not an enforceable contract under the law of the District

---

[7] Defendant Slattery also has serious reservations about whether Plaintiff has complied with the notice pleading rules of Fed. R. Civ. P. 8.  However, Slattery elects not to assert that defense given the extremely liberal pleading rules and the extremely deferential stance towards vague, confusing, and defective complaints such as the one filed by L&L.

of Columbia. As such, Plaintiff has failed to state an enforceable cause of action under Fed. R. Civ. P. 12(b)(6).

An enforceable contract exists only if there is: "(1) agreement as to all material terms; and (2) intention of the parties to be bound." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238 (D.C. 1995). The purported agreement on which Plaintiff solely bases its recovery is more properly characterized as an agreement to agree, or at most a letter of intent. The document does not specify the scope of work in the detail required to be binding, but says vaguely that the work is generally for "underground utilities". The document states only that the parties will enter into an agreement for work on underground utilities at a sum certain, but it omits a multitude of other essential terms, such as liquidated damages (a frequent sticking point), schedule of payments, means and methods of work, the time of performance, limits on liability, indemnification, and bonding requirements, that would be the product of a future negotiation and, assuming agreement was reached, essential to forming a binding agreement.

"Vagueness of expression, indefiniteness and uncertainty as to any of the essential terms of an agreement, have often been held to prevent the creation of an enforceable contract." *Rosenthal v. Nat'l Produce Co.*, 573 A.2d 365, 369-70 (D.C. 1990) (quoting 1 A. CORBIN ON CONTRACTS § 95, at 394 (1963)). Material terms including price, payment terms, duration, and the identity of the parties involved are necessary. *Jack Baker,* 664 A.2d at 1238. Without agreement as to the parties or terms, there is no way of knowing who is bound by the contract or what they are required to do. *Id.* In *Rosenthal*, the Court held that an alleged contract between a produce supplier and a restaurant was unenforceable because "there was no stated agreement as to price, quantity, quality, or

18

duration." *Rosenthal*, 573 A.2d at 370. The purported agreement is devoid of these material terms because there was no agreement on them, and therefore no enforceable contract. *See Virtual Development and Defense Int'l, Inc. v. The Republic of Moldova*, 133 F. Supp. 2d 9, 19 (D.D.C. 2001) (finding that a contract did not exist where the parties had not discussed 'the method or timing of payment . . . the number and cost of [the goods] to be sold, or the manner of performance, or the precise role of the plaintiff'"); Jack Baker, supra, (finding no contract as the parties did not show the requisite intent to be bound).

Even if the document qualifies as a formal letter of intent, however, Plaintiff's First Amended Complaint, does not allege the facts necessary to support the notion that the document is a binding contract. Letters of intent serve as nothing more than a vehicle to maintain the status quo while the parties attempt to hammer out final agreement on the terms and conditions of a contract. According to Professor Corbin, a letter of intent, when used properly, is "an outline of a not yet finalized agreement, a road-map leading perhaps to a contract." CORBIN ON CONTRACTS, § 1.16 (2005). Slattery maintains that the purported agreement is as Professor Corbin describes, a "not yet finalized agreement." Such a document serves as nothing more than a signal to each party that the other party has a good faith desire to continue negotiations to realize the goals avowed in the document. In this situation, the October 3, 2001 document served as nothing more than a place holder, a "not yet finalized agreement," to memorialize generalities in the parties' discussions in connection with the Project.[8]

L&L's attempt to enforce the so-called October 3 letter as a contract is at odds

19

with case law in this jurisdiction. "Agreements to agree" are not generally viewed by the courts as enforceable contracts. *See Novecon, Ltd. v. Bulgarian-American Enterprise Fund*, 967 F. Supp. 1382 (D.D.C. 1997) (finding that offer and acceptance achieved through exchange of correspondence was an agreement to agree to continue negotiations and not an enforceable binding legal obligation on the parties). Generally, letters of intent are only seen as binding if the essential terms included in the letter of intent are identical to the essential terms ultimately included in the signed contract. *See D.C. Area Community Council v. Jackson*, 385 A.2d 185, 187 (D.C. 1978) (*per curiam*) (stating that there is no contract if the document the parties eventually enter into later contains any material terms not already agreed upon, the so-called contract to make a contract is not a contract at all). Based on the Subcontract, we know that this requirement has not been met.

Slattery asserts that these factors militate strongly against finding that the purported agreement is a binding agreement as alleged by L&L. Thus, Slattery avers that Count I of Plaintiff's Amended Complaint fails to assert an enforceable agreement, and must be dismissed under Fed. R. Civ. P. 12(b)(6) because it fails to plead an essential element of a breach of contract cause of action.

## CONCLUSION

For the foregoing reasons, Defendant Slattery respectfully requests that this Court dismiss Plaintiff L&L's First Amended Complaint based alternatively on Fed. R. Civ.P. 12(b)(1) for lack of subject matter jurisdiction, Fed. R. Civ. P. 12(b)(3) for lack of proper

---

[8] For the limited purposes of this Motion, and taking the facts in the light most favorable to the Plaintiff, the First Amended Complaint in fact acknowledges that the parties eventually assented to terms and conditions for a binding contract. FAC ¶ 12.

venue, and Fed. R. Civ. P. 12(b)(6) for failing to state a claim upon which relief can be granted.

DATED this 29th day of August, 2005.

Respectfully submitted,

_Edmund M. Amorosi_

Val S. McWhorter (D.C. Bar No. 91231)
W. Stephen Dale
Edmund M. Amorosi (D.C. Bar No. 482765)
SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C.
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312
E-mail to be noticed: eamorosi@smithpachter.com

*Attorneys for Defendant Slattery Skanska*