## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| L&L CONSTRUCTION<br>  ASSOCIATES, INC. | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-CV-01289 |
| | ) | Judge Lamberth |
| SLATTERY SKANSKA, INC. | ) | |
| | ) | |
|     Defendant. | ) | |

## REPLY BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Respectfully Submitted,

Val S. McWhorter (D.C. Bar No. 91231)
W. Stephen Dale
Edmund M. Amorosi (D.C. Bar No. 482765)
SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C.
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312

*Attorneys for Defendant Slattery Skanska*

September 22, 2005

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION ............................................................................................................ 1

PROCEDURAL BACKGROUND.................................................................................... 1

ARGUMENT ................................................................................................................... 2

I.    Slattery's Motion To Dismiss Based On The Forum Selection Clause
      Is Timely Under Rule 12 And Applies To The Instant Dispute ......................... 2

      A.    This Court May Properly Dismiss L&L's Amended Complaint
            Under Rule 12(b)(6) For Failure To State A Claim, Rule 12(b)(3)
            For Improper Venue, Or Rule 12(b)(1) For Lack Of Jurisdiction ........... 3

            1.    Background .................................................................................. 3

            2.    Rule 12(b)(6) Motions Are Timely Made At Any Point Before
                  And During Trial......................................................................... 4

            3.    This Court May Properly Dismiss L&L's Amended Complaint
                  Under Rule 12(b)(6) For Failure To State A Claim..................... 5

            4.    Assuming *Arguendo* That The Court Is Not Persuaded
                  That Slattery's Rule 12(b)(6) Motion Is Timely, The Court
                  May Still Entertain Slattery's Motion Under The Discretion
                  Provided By Rule 12(h) And Because Slattery Raised The
                  Forum Selection Defense At The Earliest Possible Opportunity
                  In Compliance With Rule 12(g).................................................... 8

            5.    Slattery's 12(b)(6) Motion To Dismiss Would Promote Judicial
                  Economy ...................................................................................... 11

      B.    This Court May Also Properly Grant Slattery's Motion To Dismiss
            Under Rule 12(b)(3)......................................................................................... 11

            1.    Slattery's Rule 12(b)(3) Motion Was Timely Raised Once
                  The Defense Became Available.................................................... 11

            2.    L&L Should Not Be Allowed To Benefit From Its Own Obfuscation...... 12

      C.    This Court May Also Properly Grant Slattery's Motion To Dismiss
            Under Rule 12(b)(1).......................................................................................... 13

II.  The Subcontract Between Slattery And L&L Applies To The Instant Dispute
And It Supersedes the October 3, 2001 Document.............................................14

    A.  The Broadly-Worded Forum Selection Clause Covers
The Instant Dispute..............................................................................14

    B.  The Merger Clause Applies To The Instant Dispute And Is Proper
For Resolution On A Rule 12(b)(6) Motion ..........................................14

    C.  The Court Need Not Go Beyond The Four Corners Of The Integrated Subcontract
As The Merger Clause Is Unambiguous...............................................15

        1.  The Merger Clause Is Unambiguous, Thus the Court Need Not
Resort To Extrinsic Evidence ...................................................15

        2.  Use Of Extrinsic Evidence To Interpret This Unambiguous Merger Clause
As L&L Urges Would Defeat The Very Purpose Of The Parol Evidence
Rule............................................................................................16

    D.  The Phrase "Subject Matter" In the Merger Clause Is Sufficiently
Broad to Cover the Instant Dispute......................................................17

    E.  L&L Failed To Rebut Slattery's Argument That The Existence Of A
Merger Clause Is Strong Evidence That The Parties Intended The
Agreement To Be the Full And Final Expression Of Their Agreement...............19

    F.  L&L Erroneously Attempts to Introduce Unplead Facts Into Issue
In Its Opposition Motion In Multiple Instances, A Practice In Violation
Of The Federal Rules............................................................................20

III.  The October 3 Document Is Not An Enforceable Agreement...........................21

    A.  The October 3 Document Is Merely A Subcontractor's Bid Form, Which States
The General Rule That A Subcontractor Is Bound By Its Bid. ...........................22

    B.  At Best, The October 3 Document Is An Unenforceable "Agreement To Agree"
That Expressly Contemplates A Future Agreement. ...........................................23

CONCLUSION...........................................................................................25

## TABLE OF AUTHORITIES

**Cases**

*2215 Fifth St. Assocs., LP v. U-Haul Int'l, Inc.* 148 F. Supp. 2d 50 (D.D.C. 2001) ...................... 2

*Adams v. Quattlebaum,* 219 F.R.D. 195 (D.D.C. 2004) ............................................................ 2

*Advanced Barricades & Signing, Inc., v. State of Florida, Department of Transportation*, 632 So.
    2d 704 (Fla. Dist. Ct. App. 1994) ............................................................................... 20

*Arok Construction Co. v. Indian Construction Services,* 848 P.2d 870 (Ct. App. Az. 1993) ........... 23

*Arthur F. Hood v. District of Columbia*, 211 F. Supp. 2d 176 (D.D.C. 2002) ............................ 24

*Bancoult v. McNamara*, 214 F.R.D. 5 (D.D.C. 2003) ................................................................ 2

*Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227 (S.D.N.Y. 1994) ..................... 19

*Bechtel v. Liberty Nat'l. Bank*, 534 F.2d 1335 (9th Cir. 1976) ..................................................... 8

*Chiroboga v. Int'l. Bank for Reconstruction and Development*, 616 F. Supp. 963 (D.D.C. 1985)
    .................................................................................................................................... 15

*Clark Trucking of Hope Mills, Inc. v. Lee Paving Co.*, 426 S.E.2d 288 (Ct. App. N.C. 1993).... 23

*Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 196 (D.D.C. 2000) ................9, 10

*Daisley v. Riggs Bank*, 372 F. Supp. 2d 61 (D.D.C. 2005)........................................................ 16

*DDCLAB Ltd. v. Dupont*, 2005 U.S. Dist. LEXIS 2721 (S.D.N.Y. 2005) ............................ 16, 21

*Dee-K Enterprises, Inc. vs. Heveafil Sdn. Bhd.*, 985 F.Supp. 640 (E.D. Va. 1997) ...................... 9

*Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145 F.3d 505 (2d Cir. 1998).... 5

*Frietsch v. Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995) ................................................................. 11

*Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir. 1983).................................................... 8, 11, 12

*Harsco Corp. v. Segui*, 91 F.3d 337 (2d Cir. 1996 .................................................................... 16

*Holman Erection Co. v. Orville E. Madsen & Sons, Inc,* 330 N.W.2d 693 (Minn. 1983) ..... 22, 23

*Holzsager v. Valley Hospital,* 646 F.2d 792 (2d Cir. 1981) .......................................... 8

*Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd.,* 859 F.2d 4 (3d Cir. 1988)
................................................................................................................................... 5

*Int'l. Bus. Mach. Corp. v. Medlantic Healthcare Group,* 708 F. Supp. 417 (D.D.C. 1989) ........ 19

*\*Jack Baker, Inc. v. Office Space Dev. Corp.,* 664 A.2d 1236 (D.C. 1995)................................ 24

*Kerobo v. Southwestern Clean Fuels Corp.,* 285 F.3d 531 (6th Cir. 1992) ................................... 5

*\*Lambert v. Kysar,* 983 F.2d 1110 (1st Cir. 1993) ........................................................................ 5

*\*Licensed Practical Nurses, Technicians and Health Care Workers of New York v. Ulysses*
    *Cruises, Inc.,* 131 F.Supp. 2d 393 (S.D.N.Y. 2000) .................................................... 5, 6, 7, 11

*\*M/S Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1 (U.S. 1972) ................................................. 2, 7

*MacNeil v. Whittemore,* 254 F.2d 820 (2d Cir 1958) ................................................................... 8

*Marra v. Papandreou,* 216 F.3d 1119 (D.C. Cir. 2000) ........................................................... 6, 10

*\*Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.,* 2004 U.S. Dist. LEXIS 3508 (S.D.N.Y.
    2004) ................................................................................................................................. 19

*Novecon, Ltd. v. Bulgarian-American Enterprise Fund,* 967 F. Supp. 1382 (D.D.C. 1997) ....... 24

*Nycal Corp. v. Inoco PLC,* 949 F. Supp. 1115 (S.D.N.Y. 1997)................................................... 8

*Printing Plate Supply Co. v Curtis Pub. Co.,* 278 F. Supp. 642 (E.D. Pa. 1968 ........................... 8

*Richards v. Lloyd's of London,* 135 F.3d 1289 (9th Cir. 1998) .................................................... 11

*Seward v. Devine,* 888 F.2d 957 (2nd Cir. 1998) ........................................................................ 13

*Sharma v. Skaarup Ship Mgmt. Corp.,* 699 F. Supp. 440 (S.D.N.Y 1988) ................................... 5

*Spectators' Commun. Network, Inc. v. Colonial Country Club,* 253 F.3d 215 (5th Cir. 2001) ... 19

*Sub-Zero Freezer Co. v. Cunard Line Ltd.,* 2002 U.S. Dist LEXIS 27142 (D. Wisc. 2002) . 17, 18

*Thayer v. Dial Indus. Sales, Inc.*, 85 F.Supp. 2d 263, 269 (S.D.N.Y. 2000) ................................ 15

*Tomasello v. Rubin*, 920 F. Supp. 4 (D.D.C. 1996) .......................................................... 4

*Van Voorhis v. District of Columbia,* 240 F. Supp. 822 (D.D.C. 1964) ......................................... 4

*Vega v. State University of New York Board of Trustees*, 2000 U.S. Dist. LEXIS 4749 (S.D.N.Y.

Apr. 13, 2000) ........................................................................................................................... 5

## Statutes

Rule 12(b)(1)........................................................................................................ passim

Rule 12(b)(3)............................................................................................... passim

Rule 12(b)(6)........................................................................................................ passim

Rule 12(g) ........................................................................................................... passim

Rule 12(h)(2)...............................................................................................passim

## Treatises

2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (3d. ed) ..................................................................... 21

5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1387 (3d ed.)............................ 13

## INTRODUCTION

Slattery moved this Court for the following alternative relief: (1) dismissal under Rule 12(b)(6), 12(b)(3) and 12(b)(1) based on a forum selection contained in the Subcontract agreed to by both parties naming Queens, New York as the exclusive forum for dispute resolution; (2) dismissal under Rule 12(b)(6) based on a merger clause contained in the Subcontract that extinguishes purported rights under the prior agreement upon which L&L principally bases its claim; and (3) dismissal under Rule 12(b)(6) because a prior agreement relied upon by L&L is not an enforceable agreement under applicable law.

## PROCEDURAL BACKGROUND

L&L filed a one-count Complaint seeking money damages from Slattery based on an October 3, 2001 document on June 28, 2005. DI #1. Because Slattery could not determine what formed the basis for L&L's claim as the Complaint was not well-plead, Slattery timely moved to dismiss under Rule 12(b)(6) alleging that L&L failed to conform its pleading to the requirements of Rule 8. DI #5. Slattery also asserted alternatively that an October 3, 2001 document ("October 3 document") that appeared from the pleading to be the document giving rise to L&L's cause of action was not enforceable under applicable law. L&L filed an opposition announcing that, rather than as plead by L&L, its Complaint actually relied on many, many documents, including a written Subcontract executed between the parties. DI #6, Opp. at 15. While Slattery's Motion to Dismiss was pending, and after L&L filed its opposition motion on August 2, 2005, L&L sought leave of Court to amend its Complaint adding two counts based on equitable, not contractual, theories of recovery, namely promissory estoppel and unjust enrichment. DI #7. After thus being notified via L&L's opposition motion that L&L intended to rely on the Subcontract, Slattery promptly noted in its reply brief that Slattery intended to move

1

to dismiss the case based on the forum selection clause contained in the Subcontract. DI #8, p2 n.1. L&L then sought leave of Court on August 25, 2005 to file a Sur-reply alleging that Slattery raised new arguments in its reply brief. DI # 9-10.

Pursuant to decisions of this Court, Slattery concluded that the Court would dismiss its first Motion to Dismiss as moot and allow re-filing without prejudice as the first Motion to Dismiss was superseded by the Amended Complaint.[1]  L&L's motion for leave to file an amended complaint prompted Slattery to re-file its Motion to Dismiss alleging the grounds stated in the above Introduction. DI #11.[2]

## ARGUMENT

I.    **Slattery's Motion To Dismiss Based On The Forum Selection Clause Is Timely Under Rule 12 And Applies To The Instant Dispute**

L&L does not take issue with the proposition advanced by Slattery that forum selection clauses are enforced by the Courts, nor does it attempt to show that enforcing this forum selection clause would be unjustified in this circumstance, as is its burden under the law.[3]  L&L has not challenged the enforceability of the forum selection provision because the law favors these provisions and regularly enforces them. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (U.S. 1972). Rather, L&L rests its opposition on two erroneous propositions: (1) a procedural argument that Slattery waived its right to assert the forum selection clause as a defense to this matter, and (2) a substantive argument that L&L's claim is not based on the Subcontract, thus the

---

[1] *See Adams v. Quattlebaum*, 219 F.R.D. 195 (D.D.C. 2004) (denying without prejudice all pending motions pertaining to the original complaint); *Bancoult v. McNamara*, 214 F.R.D. 5, 13 (D.D.C. 2003) (same).

[2] Based on the information exchanged during the first round of briefing, Slattery elected not to re-assert its grounds of dismissal that the Original Complaint was defective under Rule 8, nor assert that same allegation against the Amended Complaint ("AC"), in an effort to streamline the disposition of this motion and conserve judicial resources, although Slattery still maintains that L&L's pleadings are not well-plead.

[3] A party seeking to defeat a forum selection clause carries the burden of demonstrating that enforcement would be unreasonable and unjust, the clause was somehow tainted by fraud, or strong public policy of the forum would be harmed by its enforcement. *See 2215 Fifth St. Assocs., LP v. U-Haul Int'l, Inc.*, 148 F. Supp. 2d 50, 54 (D.D.C. 2001)

2

forum selection clause does not apply. If the Court finds that the forum selection clause was timely raised and this dispute is governed by the Subcontract, as it should, then it should enforce the forum selection clause against L&L and dismiss this case. We address L&L's contentions with respect to the timeliness and application of the forum selection clause below.

First, contrary to L&L's statements, the Subcontract, and the forum selection provision contained therein, apply to this dispute based not only on the express statements of L&L before this Court, but also based on the facts plead by L&L in its Amended Complaint. Accordingly, the broadly worded forum selection provision contained in the Subcontract is dispositive of this Motion and the issues presented to the Court as to these matters. L&L's procedural challenges ignores established precedent allowing the Court to resolve Slattery's motion to dismiss under several Rule 12 defenses. Under any of those Rule 12 applications, Slattery contends that the Court should find that this dispute should properly be heard in the courts of Queens County, New York, as agreed by the parties. The sections below address these contentions in more detail, and focus on both L&L's procedural and substantive arguments.

### A. This Court May Properly Dismiss L&L's Amended Complaint Under Rule 12(b)(6) For Failure To State A Claim, Rule 12(b)(3) For Improper Venue, Or Rule 12(b)(1) For Lack Of Jurisdiction

#### 1. Background

Slattery's Motion to Dismiss requested relief under Rules 12(b)(6), 12(b)(3) and 12(b)(1) as the federal courts enforce valid forum selection clauses using all three of these procedural vehicles. Slattery avers that dismissal under any of the aforementioned Rule 12 defenses is proper.

**2.    Rule 12(b)(6) Motions Are Timely Made At Any Point Before And During Trial**

Defenses available under Rule 12(b)(6) cannot be waived and are properly brought at any time before or during trial. Rule 12(h)(2) states: "a defense of failure to state a claim upon which relief can be granted . . . may be made in any pleading permitted or ordered under Rule 7(a), or by motion for judgment on the pleadings, or at the trial on the merits." In addition, Rule 12(g) is not applicable to motions preserved under Rule 12(h)(2), which include motions to dismiss for failure to state a claim. Thus, Rule 12(g) is irrelevant for purposes of deciding Slattery's 12(b)(6) motion and L&L's argument is unavailing.

That a Rule 12(b)(6) defense for failure to state a claim cannot be waived is well established in this jurisdiction. *See, e.g., Coleman v. Pension Benefit Guar. Corp.*, 196 F.R.D. 193, 196 (D.D.C. 2000) (holding that a 12(b)(6) defense was not waived where the defendant did not raise the defense in its first responsive pleading); *Tomasello v. Rubin*, 920 F. Supp. 4, 5 n.2 (D.D.C. 1996) (observing that Rule 12(h)(2) allows the defense of failure to state a claim to be raised at the trial on the merits); *Van Voorhis v. District of Columbia,* 240 F. Supp. 822, 824 (D.D.C. 1964) (stating "the defense of failure to state a claim upon which relief can be granted cannot be waived and can be asserted at the trial on the merits…"). In light of this precedent, Slattery did not waive its right to move the Court to dismiss L&L's complaint under Rule 12(b)(6), since such a defense may be raised at any time.

In *Coleman*, the court observed that despite the fact that the defendant omitted its Rule 12(b)(6) defense from a previous motion to dismiss, the defense was not waived because under Rule 12(h)(2) the defense could still be raised in a motion for judgment on the pleadings or at trial. *Id.* Further, the court rejected the argument that waiting to raise the 12(b)(6) defense operated to delay the litigation or inconvenience the plaintiffs. *Id.* at 197. Accordingly, "[g]iven

4

the lack of waiver and the fact that defendant's defense will still require adjudication" the

Coleman court found that the defendant's 12(b)(6) defense may be properly asserted by

subsequent motion. *Id.* at 196-197; *See also, Vega v. State University of New York Board of*

*Trustees*, 2000 U.S. Dist. LEXIS 4749 (S.D.N.Y. Apr. 13, 2000) (allowing a successive 12(b)(6)

defense omitted from first motion and stating that the argument that such successive motions are

not permitted is "unsupported by case law and does not follow logically from the language of

Rules 12(g) and 12(h)(2)."); *Sharma v. Skaarup Ship Mgmt. Corp.*, 699 F. Supp. 440, 444

(S.D.N.Y 1988) (finding that "Rule 12 specifically allows for successive motions to dismiss for

failure to state a claim.").

### 3. This Court May Properly Dismiss L&L's Amended Complaint Under Rule 12(b)(6) For Failure To State A Claim

Many federal courts agree that Rule 12(b)(6) is an appropriate method to enforce forum

selection clauses. *See, e.g., Evolution Online Sys., Inc. v. Koninklijke PTT Nederland N.V.*, 145

F.3d 505 (2d Cir. 1998) ("Because the district court based its decision to grant [defendant's]

motion to dismiss on the court's finding of a forum-selection clause, the dismissal is founded on

Rule 12(b)(6)"); *Lambert v. Kysar,* 983 F.2d 1110, 1112 n.1 (1st Cir. 1993) (observing that the

circuit has held that dismissal under forum selection clauses are properly founded on Rule

12(b)(6)); *Kerobo v. Southwestern Clean Fuels Corp.*, 285 F.3d 531, 535 (6th Cir. 1992) (same);

*Instrumentation Associates, Inc. v. Madsen Electronics (Canada) Ltd.*, 859 F.2d 4, 6 n.4 (3d Cir.

1988) (same); *Licensed Practical Nurses, et al. v. Ulysses Cruises, Inc.*, 131 F.Supp. 2d 393,

404 (S.D.N.Y. 2000) (discussing reasons why Rule 12(b)(6) is sound approach when

adjudicating forum selection clause defenses).

The court in *Licensed Practical Nurses* addressed the distinction between venue and

forum with respect to forum selection provisions and determined that forum selection provisions

do not equate to a motion to transfer venue.  In *Licensed Practical Nurses,* Defendant removed the action pending in New York state court based on diversity of citizenship grounds and moved to dismiss, arguing, *inter alia*, that a forum selection clause in the contract required any lawsuit against the cruise line to be brought either in a state or federal court in Southern Florida. Rejecting the notion that a forum selection clause challenge must be brought under Rule 12(b)(3), the Court asserted that dismissal under Rule 12(b)(6) would be more appropriate because forum selection clauses merely designate a preferred forum, they do not actually render venue improper.  *Id.*

More specifically, the court observed that typical forum selection clauses do not focus on appropriate venue within the federal system, but rather purport to preclude suit in all but the preferred forum.  *Id.*  Thus, such clauses affect more than a question of venue since they seek to dictate the proper sovereign to resolve a dispute, not merely the particular location for bringing the suit within that sovereign's system.  *Id.*

Accordingly, the court concluded that when "[v]enue, as that term is defined by Congress, is proper . . . the fact that the parties agree to litigate disputes in another forum *is not a question of venue*, but one of contract, which will be enforced unless fundamentally unfair."  *Id.* at 404 (emphasis added).    The D.C. Circuit took a similar view when it said that forum selection clauses are understood:

> [A]s a distinct contract in and of itself, that is, an agreement
> between the parties to settle disputes in a particular forum
> that is separate from the obligations the parties owe to each
> other under the remainder of the contract.

*Marra v. Papandreou,* 216 F.3d 1119, 1123 (D.C. Cir. 2000) (noting different procedural approaches to disposing of forum selection clause defenses without resolving the issue).

Finally, because federal courts are not empowered to transfer cases to a state court system, the Court asserted that dismissal, not transfer of venue, was the appropriate remedy. The *Licensed Nurses* court observed: "[j]ust as a federal court may decline to exercise its jurisdiction in cases of forum non conveniens . . . the court may similarly dismiss on the closely-related grounds that the parties have agreed in advance that some other forum is the more convenient location for resolution of the dispute." 131 F. Supp. 2d. at 404.

Just as venue was technically proper in *Licensed Nurses*, in the present case venue for this motion is technically proper in this Court as a substantial part of the events giving rise to the claim occurred in the District of Columbia. However, Slattery's motion focuses not on the proper venue within the federal system, but enforcement of an agreed-upon term of the Subcontract calling for all disputes to be resolved in Queens County New York. Enforcement of that agreement, in this matter, calls not for a transfer of venue, but dismissal of the action.

Following the precedent set in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (U.S. 1972) establishing a presumption in favor of enforcing forum selection clauses, the Court should enforce this forum selection clause as L&L has failed to meet its burden to overcome it. Moreover, applying the approach advocated by the Circuit decisions listed above and *Licensed Nurses*, dismissal under Rule 12(b)(6) is an appropriate remedy when considering forum selection clause defenses, even more so in this instance because the Court does not have the power to transfer the case to a New York state court sitting in Queens. Thus, the Court need not consider further L&L's argument that Slattery's Motion to Dismiss under Rule 12(b)(6) is untimely, and may move to the next issue of whether the forum selection clause covers the instant dispute as Slattery avers that it does, addressed in Section II of this Reply.

4.    **Assuming *Arguendo* That The Court Is Not Persuaded The Slattery's Rule 12(b)(6) Motion Is Timely, The Court May Still Entertain Slattery's Motion Under The Discretion Provided By Rule 12(h) And Because Slattery Raised The Forum Selection Defense At The Earliest Possible Opportunity In Compliance With Rule 12(g)**

Slattery did not waive the forum selection clause defense because Rule 12(b)(6) motions are timely at any point under Rule 12(h)(2) and are exempt from Rule 12(g). Nevertheless, assuming *arguendo* that this Court does not agree with that proposition, the Court still has the discretion to entertain Slattery's Motion under Rule 12(h)[4] and 12(g) because Slattery raised the defense at the earliest possible opportunity. Thus, Slattery's Motion to Dismiss complies with Rules 12(g) and 12(h), to the extent those rules apply to this Motion in any respect.

The forum selection defense was not available until L&L announced its newfound reliance on the Subcontract in its Opposition Motion. DI #6, Opp. at 15. If, as here, a defense only becomes available after the first defensive move, that defense is not waived. *See, e.g., Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir. 1983) (holding that the defendant did not waive the defense of lack of personal jurisdiction by omitting it from an original answer because plaintiff's complaint did not put defendant on notice that plaintiff's domicile in New Hampshire was questionable); *Holzsager v. Valley Hospital*, 646 F.2d 792, 796 (2d Cir. 1981) (rejecting a claim of waiver under Rule 12(h)(1) and stating that "a party cannot be deemed to have waived objections or defenses which were not known to be available"); *Printing Plate Supply Co. v*

---

[4] In *Bechtel v. Liberty Nat'l. Bank*, 534 F.2d 1335, 1338 (9th Cir. 1976), the court stated that Rule 12(h)(1) "does not in any way prevent a judge in his discretion from permitting a party to expand the grounds of motion well in advance of a hearing." *Id. citing MacNeil v. Whittemore*, 254 F.2d 820, 821 (2d Cir 1958). In *Bechtel*, Plaintiff filed its complaint on March 16, 1971. Appellants removed the action to the District Court in Arizona, on April 29, 1971 they moved to dismiss the action for the claimed failure of the complaint to state a claim upon which relief could be granted and for failure to join certain parties as indispensable parties. On July 8, 1971, prior to a hearing on this motion, the bank filed an amended motion to dismiss, adding as a ground for dismissal a lack of venue. Over Bechtel's objection, the Court allowed the venue motion to be considered and dismissed on that basis. *See also Nycal Corp. v. Inoco PLC*, 949 F. Supp. 1115 (S.D.N.Y. 1997) (relying on *McNeil* for the proposition that the court has the power to permit supplementation of a motion to avoid a Rule 12(h)(1) waiver).

*Curtis Pub. Co.*, 278 F. Supp. 642 (E.D. Pa. 1968) (asserting that the "then available" exception to the general operation of Rule 12(g) is "particularly appropriate when a Motion for a More Definite Statement is made, because logically other Rule 12 motions cannot be raised until the movant knows what the claims against him are.").

In response to L&L's Original Complaint, which made only an oblique passing reference to the Subcontract, Slattery filed a Motion to Dismiss under Rule 12 alleging that L&L had filed a defective pleading not conforming to Rule 8. A Rule 8 motion is analogous to a motion for a more definite statement insofar as under either motion the defendant alleges that plaintiff has not met its burden under Rule 8 to state adequate grounds for its claims. Moreover, even though L&L filed an Amended Complaint, it made no effort to address the shortcomings in the Original Complaint identified by Slattery. Thus, since the Original Complaint did not give Slattery adequate notice of L&L's claims, Slattery's forum selection clause defense was not waived.

L&L's position appears to be that the Original Complaint gave Slattery sufficient notice of the opportunity to assert the application of the forum selection clause defense at the time that Slattery responded to the Original Complaint. To support this position, L&L cites liberally from *Dee-K Enterprises, Inc. vs. Heveafil Sdn. Bhd.*, 985 F.Supp. 640 (E.D. Va. 1997). However, the persuasive value of this case is limited because, like virtually all of the cases cited in L&L's opposition, it does not involve a forum selection clause. Instead, in *Dee-K* the defendant asserted a classic venue defense arguing that it transacted no business in the Eastern District of Virginia, thereby rendering venue improper. *Dee-K Enterprises,* 985 F.Supp. at 643. The court concluded that because the defendants clearly knew whether or not they transacted business in the Eastern District of Virginia, regardless of the clarity of the complaint, the defendants waived the venue defense. *Id.*

9

In *Marra v. Papandreou, supra*, the D.C. Circuit recognized that forum selection clauses are in fact contracts within a contract, thus distinguishing this defense from a traditional jurisdictional defense.

Thus, Slattery raised the forum selection defense at the earliest possible opportunity. L&L based its Complaint on an Agreement dated October 3, 2001 (the 'Agreement')." DI #1, Complaint ¶¶ 8, 17-18.   Specifically, in ¶¶12-13 of its Complaint, L&L alleges that Slattery awarded L&L work in the amount of approximately $1.1 million dollars.  It was not until Slattery filed a Motion to Dismiss under Rule 12 asserting that: (1) the Complaint was defective under Rule 8, and (2) the October 3 "Agreement" is not enforceable, that L&L modified its position and decided that its action relies more loosely on a collection of materials, described by L&L as "many, many documents," including the Subcontract. DI #6, Opp. at 15.

L&L's argument that Slattery should have known that the Subcontract was at issue is disingenuous when it has consistently and adamantly maintained in its opposition papers that the Subcontract is not relevant to the dispute.  DI #9, Sur-Reply at 4; DI #13, Second Opp. at 14. L&L devotes an entire section of its second opposition, entitled "L&L's Complaint is Not Governed by The Subcontract" to the lack of significance of the Subcontract, asserting at least seven times throughout that the Subcontract does not govern the Complaint, and further states that reference to the Subcontract can be made "[o]nly in the event that it becomes necessary to establish an agreement as to other material terms . . . ." DI #13, Second Opp. at 24.  Essentially, L&L is asking this Court to ignore one of its two primary defenses to Slattery's Motion to Dismiss – namely that the Subcontract is not relevant – except when it supports its argument that Slattery should have known that the Subcontract was relevant.  Because L&L did not put Slattery

10

on notice that the Subcontract was at issue, Slattery cannot be deemed to have waived its Rule 12(b)(6) defense.

### 5.    Slattery's 12(b)(6) Motion To Dismiss Would Promote Judicial Economy

Finally, while some courts review motions to enforce a forum selection clause under Rule 12(b)(3), *see, e.g., Frietsch v. Refco, Inc.*, 56 F.3d 825, 830 (7th Cir. 1995); *Richards v. Lloyd's of London*, 135 F.3d 1289, 1292 (9th Cir. 1998), the courts that discuss their rationale for this choice assert that they choose Rule 12(b)(3) for the sake of promoting judicial economy. Slattery's motion raising the forum selection provision does not impair judicial economy, as it was raised at the earliest possible moment and in response to L&L's own assertions. Thus, Slattery's forum selection clause defense at this juncture would promote judicial economy and remains consistent with the notion that these matters should be resolved in advance of addressing substantive disputes. Accordingly, this Court should grant Slattery's 12(b)(6) motion to dismiss.

### B.    This Court May Also Properly Grant Slattery's Motion To Dismiss Under Rule 12(b)(3)

Even if the Court decides that Rule 12(b)(3) is the proper vehicle for a motion to dismiss seeking to enforce a forum selection clause, Slattery's motion also satisfies the requirements of Rule 12(b)(3).

### 1.    Slattery's Rule 12(b)(3) Motion Was Timely Raised Once The Defense Became Available

Unlike Rule 12(b)(6) defenses, 12(b)(3) defenses are subject to the requirements of Rule 12(g) and 12(h)(1). Accordingly, a party must raise all "then available" 12(b)(3) defenses in its first defensive move. However, as discussed above, defenses that were not available at the time of the party's first defensive move are not waived. *Glater v. Eli Lilly & Co.*, 712 F.2d 735 (1st Cir. 1983). Because forum selection clause defenses are contractual in nature as discussed by

11

*Licensed Nurses, supra,* expecting a defendant to raise the defense when the contract containing the clause is not at issue, as L&L has repeatedly averred in its opposition in this case, is unreasonable until the party is actually on notice that the contract is at issue.

As discussed above, L&L did nothing to indicate that it was relying on the Subcontract in its Original Complaint and remains adamant that the Subcontract does not govern this dispute. The October 3 document was, according to L&L's Complaint, the only agreement purportedly breached and giving rise to this action. Absent the October 3 document, the purported agreement between these two parties disappears. Slattery thus reasonably concluded in its Motion to Dismiss and accompanying Memorandum of Law that the October 3 document is the only document that could possibly give rise to L&L's claim for alleged lost profits based on alleged lost work.

Therefore Slattery was not on notice that the Subcontract was at issue when it filed its initial Motion to Dismiss. However, as soon as L&L indicated that it was the Subcontract was one of "many, many documents" upon which it intended to rely, Slattery promptly gave notice to the Court and to L&L in its reply brief that it intended to invoke the forum selection clause. DI #8 at 2 n.1. Thus, Slattery has not waived its 12(b)(3) defense.

### 2.    L&L Should Not Be Allowed To Benefit From Its Own Obfuscation

To conclude that Slattery has waived its 12(b)(3) defense because it did not raise the defense in response to L&L's original complaint would allow L&L to benefit from its own inadequate pleading and obfuscation. In effect, it would encourage future plaintiffs in L&L's position to attempt to avoid their contractual obligations by filing vague, inadequate complaints in the hopes that a defendant will inadvertently waive contractual rights that it did not know were

at issue.  While the notice pleading rules are liberal, they do not require that defendants be clairvoyant.

The purpose of the automatic waiver provisions in Rules 12(g) and 12(h)(1) "is to encourage the consolidation of motions and discourage the dilatory devise of making them in a series." 5C WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 1387 (3d ed.).  Here, if any party can be described as behaving in a dilatory manner, it is L&L due to the inadequacy of its Original and Amended Complaints.   In comparison, Slattery had no earlier opportunity to raise the forum selection defense and raised it promptly once it became available.  Accordingly, Slattery has not waived its forum selection clause defense under Rule 12(b)(3), and this Court may properly grant Slattery's motion to dismiss seeking to enforce the forum selection clause.

### C.    This Court May Also Properly Grant Slattery's Motion To Dismiss Under Rule 12(b)(1)

It is also proper for this court to grant Slattery's motion to dismiss under Rule 12(b)(1), a defense that can never be waived under Rule 12(h)(3). ("Whenever it appears … that the court lacks jurisdiction of the subject matter, the court shall dismiss the action). *See Seward v. Devine*, 888 F.2d 957 (2nd Cir. 1998).  In *Seward,* the defendant bank sought dismissal all of the Sewards' state law claims, alleging in part fraud and breach of contract, pursuant to Rule 12(b)(1) because the forum selection clauses contained in the various agreements between them obligated the parties to litigate all disputes arising out of those agreements in New York state court.  *Id.* at 960-61.  The Second Circuit affirmed the district court's decision to dismiss under Rule 12(b)(1) pursuant to the forum selection clause because the parties "plainly provided that venue was to be limited solely to the state court" *Id.* at 961.  Likewise, in this case the forum selection clause contained in the Subcontract plainly provides that venue and jurisdiction exists exclusively in the Supreme Court of the State of New York, County of Queens.

In summary, this Court may properly grant Slattery's Motion to Dismiss on the basis of either Rule 12(b)(6) for failure to state a claim, Rule 12(b)(3) for improper venue, or Rule 12(b)(1) for lack of jurisdiction.

## II.    The Subcontract Between Slattery And L&L Applies To The Instant Dispute And It Supersedes The October 3, 2001 Document

### A.    The Broadly-Worded Forum Selection Clause Covers The Instant Dispute

L&L denies that the forum selection clause applies to the instant dispute. However, the Subcontract between SL, a Joint Venture ("SL") and L&L establishes the rights and remedies available to each party for "[a]ny action at law or equity commenced by [either party] on causes of action arising under this Subcontract." DI #11, at 3 (Subcontract, Article 31). This provision requires that any and all disputes arising under the Subcontract shall be governed by the law of New York and tried in a Queens County New York courtroom.[5] Because the allegations raised by L&L in its Complaint, as newly explained in its opposition motion, cannot be supported without relying at least in part on the Subcontract, the Amended Complaint, by definition, relies on the Subcontract and thereby implicates Article 31. DI #7, Amended Complaint ¶¶ 12-13. Accordingly, this dispute is covered by the forum selection clause.

### B.    The Merger Clause Applies To The Instant Dispute And Is Proper For Resolution On A Rule 12(b)(6) Motion

L&L and Slattery agree that L&L and SL, of which Slattery is a member, entered into a Subcontract for a sum certain for underground utilities work. Count I of L&L's Amended Complaint alleges that Slattery breached a contract. DI #7, AC ¶ 17-18. Slattery, avers that the only contract enforceable at law between L&L and Slattery, technically SL, is the Subcontract. The gravamen of L&L's Amended Complaint is that the Subcontract was for an amount less than what it alleges it was entitled to, thus its rights arise out of or relate to the Subcontract. Even

---

[5] The full text of the forum selection clause is reproduced at page 3 of Slattery's Motion to Dismiss. DI #11.

though L&L alleges that the October 3 document governs this dispute, such a contention is not

tenable as a duly authorized L&L representative executed a Subcontract that contained a merger

clause nullifying any prior agreements or understandings, which would precude the October 3

document.  L&L has not disputed the fact that it assented to this provision and the terms

contained in the clause.  Nor does L&L contend that it failed to comprehend the scope of the

clause at the time of execution.  Thus, the merger clause applies to the instant dispute.

C.    **The Court Need Not Go Beyond The Four Corners Of The Integrated
      Subcontract As The Merger Clause Is Unambiguous**

1.    **The Merger Clause Is Unambiguous, Thus The Court Need Not
      Resort To Extrinsic Evidence**

As stated in its opening motion, Slattery maintains that the merger clause contained in the

Subcontract is unambiguous and should be enforced against L&L.  L&L's formulation of the law

misstates an elementary point of contract interpretation.  If the document or the clause at issue

within a document is unambiguous, then the court does not need to examine, and should not

examine, items outside the four corners of the agreement.  *Chiroboga v. Int'l. Bank for*

*Reconstruction and Dev.*, 616 F. Supp. 963, 969 (D.D.C. 1985) (stating "well-established

[principle] in this Circuit that a trial court need not consider extrinsic evidence when interpreting

a contract if the contractual provision in dispute is unambiguous."); *Thayer v. Dial Indus. Sales,*

*Inc.*, 85 F.Supp. 2d 263, 269 (S.D.N.Y. 2000).

The rationale for such a rule is clear, to bring order and certainty to transactions between

parties, facilitate commerce and reduce litigation.  This case presents no reason to depart from

established precedent as the Subcontract merger clause is unambiguous.  The sum total of L&L's

Subcontract with SL was decided at the bargaining table, and L&L should not be allowed to

renegotiate its bargain using the Court as an interlocutor.

The plain language of the merger clause of Article 32 of the Subcontract is comprehensive, covering all prior understandings and negotiations, including the October 3 document. The October 3 document is a classic example of a non-binding agreement to agree, a prior understanding and negotiation that is superseded by a latter agreement if the preliminary agreement or negotiations blossom into a contract, as happened in this case. Upon agreement on the latter agreement, discussions and documents of any and all types that are inconsistent with the latter agreement, such as the October 3, 2001 document, are excluded by the merger clause.

> **2.    Use Of Extrinsic Evidence To Interpret This Unambiguous Merger Clause As L&L Urges Would Defeat The Very Purpose Of The Parol Evidence Rule**

Courts commonly dismiss complaints such as the one at issue based on an unambiguous merger clause in integrated contracts under Rule 12(b)(6) without resort to extrinsic evidence. L&L's assertion that a Court must resort to extrinsic evidence when interpreting a merger clause or a writing generally, is at odds with cases in this circuit and others. Further, such a position would seriously undermine the sound and long-standing rationale underlying the parol evidence rule. *See Daisley v. Riggs Bank*, 372 F. Supp. 2d 61, 68-69 (D.D.C. 2005) (granting 12(b)(6) motion relying solely on unambiguous integrated offer letter even in the absence of a formal merger clause); *Harsco Corp. v. Segui*, 91 F.3d 337, 343 (2d Cir. 1996) (affirming 12(b)(6) dismissal based on merger clause in case involving "detailed writing developed via negotiations among sophisticated business entities" without extrinsic evidence); *DDCLAB Ltd. v. Dupont*, 2005 U.S. Dist. LEXIS 2721 (S.D.N.Y. 2005) (granting 12(b)(6) motion against complaint for breach of contract and promissory estoppel based on merger clause noting that very purpose of merger clause is to exclude extrinsic evidence that would vary the terms of the writing)[6]; *Sub-*

---

[6] Note that the presence of the merger clause resulted in the dismissal of the breach of contract and the promissory estoppel counts. Slattery avers that the same principle should be applied in this case to all three counts of the

*Zero Freezer Co. v. Cunard Line Ltd.*, 2002 U.S. Dist LEXIS 27142 (D. Wisc. 2002) (granting 12(b)(6) dismissal based on merger clause stating that extrinsic evidence is not relevant when clause is unambiguous).  L&L's statement that the enforcement of a merger clause is not subject to a Rule 12(b)(6) motion is thus inconsistent with case law.  In fact, L&L's position that extrinsic evidence must be used to interpret a written contract can only mean that it seeks to amend the terms of the written agreement or undermine its enforceability, which would defeat the very purpose for which the parol evidence rule exists.

### D.     The Phrase "Subject Matter" In The Merger Clause Is Sufficiently Broad To Cover The Instant Dispute

L&L erroneously attempts to create ambiguity by arguing that the term "subject matter" in the Subcontract's merger clause does not capture the instant dispute because not all underground utility work that might have been necessary to complete the project was included in the Subcontract.  However, L&L mistakes the standard for determining ambiguity with its desire for additional work.  The amount of work performed on the overall project is not the issue.  The issue is whether the clause to be enforced is clear on its face.  The fact that the Subcontract does not discuss other provisions relating to underground work or potential add-ons does not mean that the merger clause is ambiguous, it simply means that L&L and Slattery agreed to a scope of work that did not include those items.

In *Sub-Zero Freezer Co. v. Cunard Line Ltd, supra*, the court addressed this precise issue, noting that the absence of certain terms does not create ambiguity.  Cunard asserted a merger clause contained in the written contract as a defense to efforts by Sub-Zero to introduce extrinsic evidence in the form of a letter from Cunard providing a more favorable refund policy for cruise fees than the written agreement.  Sub-Zero argued that a one-sided force majeure clause (in favor

---

complaint as the existence of a contract bars relief under equitable theories. *EBCI, Inc., v. Goldman Sachs & Co.*, 832 N.E.2d 26 (N.Y. 2005).

of Cunard) created an ambiguous contract because it did not address plaintiff's force majeure rights. The Court rejected Sub-Zero's assertion stating that the absence of a contract term does not make the contract ambiguous. *Id.* at *10-11. In this case, the absence of underground work that might have been performed on the New York Avenue project does not make the Subcontract ambiguous.

In fact, the term "subject matter" and the overall merger clause itself is sufficiently broad to cover the instant dispute. The merger clause, which states that "all prior understandings and representations with respect to the subject matter are merged herein," applies for the following reasons. First, L&L cannot seriously argue that the October 3 document is not a prior understanding or representation. The October 3 agreement is the prototype for documents that are typically preludes to formal agreements in commercial transactions. Simply because the amount eventually agreed-to in the Subcontract is less than the amount stated in the October 3 document does not mean that the October 3 document was not a prior agreement. In fact, the October 3 document did not say that the parties would agree to enter into formal agreements, plural, but in a formal agreement, singular, as is represented by the Subcontract. Second, when L&L signed the Subcontract, its representative did not make any reservation of right or include any other term in the Subcontract indicating that more work was included as part of the Subcontract, nor could it. Third, the subject matter of the latter agreement is the same subject matter as stated in the October 3 document, namely underground utilities. Although L&L desperately wants to disassociate itself from the Subcontract by not naming SL or Lane Construction Corporation, the other joint venture partner, and suing only Slattery, Slattery's execution of the October 3 document was done while acting on behalf of SL, a Joint Venture. Thus, the parties to the October 3 document and the Subcontract are the same. Fourth, the

18

presence of a merger clause in a contract is presumptively deemed to preclude other alleged oral

or written agreements.[7]

###### E.    L&L Failed To Rebut Slattery's Argument That The Existence Of A Merger Clause Is Strong Evidence That The Parties Intended The Agreement To Be The Full And Final Expression Of Their Agreement

L&L did not challenge Slattery's assertion that the presence of a merger clause in a

contract is persuasive evidence that the parties intended to exclude all other terms, conditions,

and agreements.  In fact, Plaintiff does not attempt to distinguish cases cited by Slattery in

support of its argument that the merger clause operates to extinguish plaintiff's claims as plead.

In *Mercury West A.G., Inc. v. R.J. Reynolds Tobacco Co.*, 2004 U.S. Dist. LEXIS 3508

(S.D.N.Y. 2004), the court applied merger and forum selection clauses over plaintiff's objection

that the dispute at issue arose under prior agreements and not the latter contract.  Like the

plaintiff in *Mercury West*, L&L hinges it case on a previous agreement, the October 3 document,

which has been superseded by a later executed contract.  Many other cases have come to the

same conclusion.  *See Barnum v. Millbrook Care Ltd. Partnership*, 850 F. Supp. 1227 (S.D.N.Y.

1994); *Int'l. Bus. Mach. Corp. v. Medlantic Healthcare Group*, 708 F. Supp. 417, 424 (D.D.C.

1989) ("courts have held that an integrated written contract controls as against any and all prior

inconsistent oral agreements or promises.").

L&L also failed to take issue with a Fifth Circuit case in which the court found that the

parties' letter of intent was subsumed by a formal contract later executed by the parties.  In

*Spectators' Commun. Network, Inc. v. Colonial Country Club*, 253 F.3d 215, 225-26 (5th Cir.

2001), the plaintiff argued, as in this case, that the letter of intent was an enforceable agreement

---

[7] Assuming *arguendo* that the Court were to consider extrinsic evidence, it would only be allowed to consider *consistent, additional* terms.  The October 3, 2001 document is not a consistent, additional term.  Rather it is contrary to the Subcontract.  Thus it would be inadmissible to divine the parties' intent in any event.

in its own right. The defendant argued that the letter of intent was only an agreement to agree and that the formal contract represented the parties' agreement. The Fifth Circuit agreed with the defendant because, as in the instant matter, the contract: (1) contained a merger cause, (2) it was much longer and more detailed than the letter of intent, and (3) the contract contained specific terms different from those contemplated in the letter of intent, such as price, in the present case.

### F.    L&L Erroneously Attempts To Introduce Unplead Facts Into Issue In Its Opposition Motion In Multiple Instances, A Practice In Violation Of The Federal Rules

L&L's erroneous factual allegation that Slattery and L&L agreed that more work would be forthcoming beyond the Subcontract is a blatant violation of the rule against amending pleadings and introducing unplead facts via an opposition motion, including comments about Slattery's performance of its contract with WMATA, which have no bearing on this case.[8] For example, L&L's Complaint does not allege that the Subcontract includes any agreement that Slattery would provide more work to L&L. Yet the opposition papers allege just that. DI #6, Opp. at 17-18; DI # 10 at 19; DI #13 at 39. L&L does not allege in its Complaint that the Subcontract contained any representation that L&L should expect more work, as L&L now asserts. DI #1, Compl. ¶ 12; DI #6, Opp. at 17-18; DI #7, Amended Complaint ¶ 12; DI # 10 at 19; DI #13 at 39.

L&L also raises the issue of fraud in the inducement in the execution of the Subcontract, albeit improperly in its opposition papers. DI #13 at 40-41. Leveling such an allegation at this

---

[8] As L&L has no standing to raise allegations with respect to Slattery's attainment of set-aside goals included in Slattery's contract with WMATA because L&L is not a party to the prime contract, Slattery can only presume that L&L's inflammatory and gratuitous comments in this regard in its opposition papers are intended to color the Court's view toward Slattery, to which Slattery objects and requests that the Court disregard as irrelevant. DI #6, Opp. at 1-2; DI #10, Sur-reply at 21-22; DI #13, at 1-2. *See Advanced Barricades & Signing, Inc., v. State of Florida, Department of Transportation*, 632 So. 2d 704, 751 (Fla. Dist. Ct. App. 1994) (finding that contracts between the state and contractors do not create third party beneficiary rights in those who are not a party to the contract and thus holding that a disadvantaged business "does not have standing to request . . . a hearing because there is no statute or rule under which the state is empowered or obligated to protect disadvantaged subcontractors").

stage outside the pleadings is clearly suspect and in any event is excluded by language in the merger clause which expressly says that "there have been no representations by either party to induce execution of this Subcontract." DI #11 at 3 (quoting merger clause). In fact, had L&L truly considered such allegations legitimate, it would have included them in its Original or Amended Complaints. After having two opportunities to raise such an allegation, L&L's Amended Complaint merely states that the Subcontract is for an amount less than what L&L expected.

If the additional work was agreed to, then L&L would have or should have reduced such an agreement to writing. The Subcontract contains no such promises, nor could it, because there was no such agreement. L&L is raising the classic argument that an oral promise allegedly agreed to before or after the Subcontract was signed alters the terms of the written agreement. Extrinsic evidence of this type is precluded by the merger clause. As stated by one court, "[r]easonable businesspeople would therefore anticipate such an obligation to be set forth in the written contract." *DDCLAB LTD. v. Dupont*, 2005 U.S. Dist. LEXIS 2721 (S.D.N.Y. Feb. 18, 2005) (rejecting plaintiff's effort to introduce extrinsic evidence about oral agreement bearing on written agreement). The Court should completely disregard L&L discussion of this topic as they allege facts not included in the Original Complaint or the Amended Complaint and thus fall outside of the pleadings.[9]  Second Opp. at 39-40, DI #13.

### III.    The October 3 Document Is Not An Enforceable Agreement

Plaintiff has not remedied its failure to allege facts showing that the October 3 document is an enforceable agreement. Plaintiff cannot overcome the language of the October 3 document,

---

[9] In passing judgment on the sufficiency of a complaint, the Court is limited to the allegations contained within the pleadings. 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (3d. ed). "The Court may not, for example, take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a)." *Id.*

which evidences that it is nothing more than a subcontractor's bid form or, at best, a

contemplation of a future agreement lacking any intent to create an enforceable agreement.

### A. The October 3 Document Is Merely A Subcontractor's Bid Form, Which States The General Rule That A Subcontractor Is Bound By Its Bid.

The October 3 document is a one page, pre-printed WMATA form upon which

subcontractor bids are recorded.[10]  The document is not intended to create an enforceable

agreement and does not contain any language indicating that it is an enforceable agreement.  To

the contrary, the language of the October 3 document reflects that it is meant solely to capture

the subcontractor's bid.

The only promise stated or implied is the general construction contracting principle that a

subcontractor is bound by its bid.  At the top of the section in which the subcontractor signs the

form, the document states: "The undersigned [i.e., L&L] will enter into a formal agreement with

you [i.e., Slattery] for the above work upon your execution of a contract with the Authority."

This statement reflects the established principle that a subcontractor is bound by its bid and must

honor it if the contractor seeks to enter into a subcontract following the award of the prime

contract.  The subcontractor's obligation to honor its bid does not create any obligation on the

part of the prime contractor to enter into a subcontract with the bidder.

This "one-way street" of obligation in construction contracting was upheld by the

Supreme Court of Minnesota in *Holman Erection Co. v. Orville E. Madsen & Sons, Inc.*, 330

N.W.2d 693, 695 (1983) ("Appellant's argument flies in the face of a large body of precedent

holding that no contract is formed by the listing of a subcontractor in a general contractor's

bid....This court has held, however, that the subcontractor may be bound to his bid as submitted

---

[10] It is also incomplete, lacking entries in several sections under the heading "to be completed by the Prime Contractor," including: "Name of DBE"; "Work Items"; "Projected DBE Commencement Date"; and "Projected DBE Completion Date."

to the general contractor by operation of promissory estoppel."); *See also Clark Trucking of Hope Mills, Inc. v. Lee Paving Co.*, 426 S.E.2d 288, 289-91 (1993) (holding that "subcontractors' bids in this State are not viewed as sufficient consideration to support an implied contract between the contractor and the subcontractor" and "[w]e find no reason to differentiate between Clark's bid as a disadvantaged business and any other subcontractor's bid.").[11]

Thus, while the October 3 document bound L&L to honor its bid if Slattery was awarded the prime contract, it did not impose any obligation on Slattery to enter into a subcontract with L&L. L&L seeks to create an enforceable agreement out of nothing more than its basic obligation to stand by its bid. This type of argument, although frequently advanced, is rejected by courts. *See Holman Erection Co.*, 330 N.W.2d at 699 (concluding that "[a] decision in favor of the subcontractor on this issue would place Minnesota in a minority position as perhaps the sole state to hold that a contract is formed by the mere listing of a subcontractor in a general contractor's bid to the awarding authority.").

**B. At Best, The October 3 Document Is An Unenforceable "Agreement To Agree" That Expressly Contemplates A Future Agreement.**

Even if the October 3 document is found to be more than a subcontractor bid form, Plaintiff has failed to allege facts that show the required intent to create an enforceable agreement. Plaintiff is unable to overcome the language of the October 3 document that indicates the parties' contemplation of a future agreement and reflects a lack of intent to create

---

[11] Plaintiff's reliance on *Arok Construction Co. v. Indian Construction Services* is misplaced. There the subcontractor offered to reduce its bid an additional amount if the contractor would promise to award the subcontract to it if the contractor received the prime contact. 848 P.2d 870 (1993) ("ICS bargained for the lower bid price from AROK; AROK bargained for the promise of the contract award. The exchange of these return promises constitutes consideration. ICS further admits that consideration was given."). In this case, there is no consideration for the creation of an enforceable agreement.

an enforceable agreement.

The statement discussed previously, that the subcontractor must stand by its bid, also clearly indicates that the parties intended that any enforceable agreement would be made in the future, "The undersigned will enter into a formal agreement with you for the above work upon your execution of a contract with the Authority."

Where an "agreement to agree" or a letter of intent contemplates a future agreement, there is a presumption of lack of intent to create an enforceable agreement. The court in *Jack Baker* laid out this presumption under D.C. law, "[T]he party asserting the existence of a contact has the burden of proof on that issue [i.e., the dual requirements of intent and completeness]. Where the parties contemplate a subsequent written contract, this burden is particularly onerous." *Jack Baker, Inc. v. Office Space Dev. Corp.*, 664 A.2d 1236, 1238-1239 (D.C. 1995); *See also Novecon, Ltd. v. Bulgarian-American Enterprise Fund*, 967 F. Supp. 1382 (D.D.C. 1997) (refusing to find an enforceable agreement because a future "definitive agreement" was expressly contemplated in a letter between the parties).

The October 3 document clearly reflects the contemplation of a subsequent "formal agreement" and displayed no intent to create an enforceable agreement through the October 3 document. Because "parties will not be bound to a preliminary agreement unless the evidence presented clearly indicates that they intended to be bound at this point," the October 3 document cannot be found to be an enforceable agreement. *Jack Baker*, 664 A.2d at 1239; *See also Arthur F. Hood v. District of Columbia*, 211 F. Supp. 2d 176, 180 (2002) ("The District of Columbia adheres to the 'objective law of contract,' meaning that the court must look at the parties' objective manifestations of intent in interpreting settlement agreements.").[12]

---

[12] It is worth pointing out that, according to Plaintiff's argument, even if an enforceable agreement was created by the October 3 document, there was no breach of this agreement by Slattery. Plaintiff argues

## CONCLUSION

For the foregoing reasons, Defendant Slattery respectfully requests that this Court dismiss

Plaintiff L&L's Complaint.

DATED this 22nd day of September, 2005.

Respectfully submitted,

*[signature]*

Val S. McWhorter (D.C. Bar No. 91231)
W. Stephen Dale
Edmund M. Amorosi (D.C. Bar No. 482765)
SMITH, PACHTER, MCWHORTER & ALLEN, P.L.C.
8000 Towers Crescent Drive, Suite 900
Vienna, Virginia 22182
Telephone: 703-847-6300
Facsimile: 703-847-6312
E-mail to be Noticed: eamorosi@smithpachter.com

*Attorneys for Defendant Slattery Skanska*

---

that the October 3 document created an enforceable agreement between Slattery and L&L in which Slattery promised to award L&L work for underground utilities in the amount of $4.25 million if Slattery was awarded the prime contract. ("The agreement by L&L and Slattery that L&L would be allowed to do the underground utility work was conditioned upon Slattery entering into the Prime Contract with WMATA." Opp. at 20.)  Plaintiff asserts that the October 3 Agreement was between L&L and *Slattery* and that neither "SL, a joint venture" nor The Lane Construction Corporation were parties to the agreement. ("This new entity 'SL, a Joint Venture', and The Lane Construction Corporation, did not execute and were not parties to the October 3, 2001 document and agreement." Opp. at 34.)  The WMATA contract was awarded to *"SL, a Joint Venture"* and not Slattery.  Following Plaintiff's argument, it becomes clear that the condition precedent to the obligation to award L&L the work never occurred.  As Plaintiff argues its case, the October 3 Agreement, which "was conditioned upon Slattery entering into the Prime Contract with WMATA," was never breached because Slattery never entered into the Prime Contract with WMATA.

25